844 P.2d 712

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Johnny E. WAVRICK, Defendant–Appellant.**

**No. 19447.**

Court of Appeals of Idaho.

Dec. 28, 1992.

John R. Hathaway, Orofino, for defendant-appellant.

Larry J. EchoHawk, Atty. Gen., Douglas A. Werth, Deputy Atty. Gen., Boise, for plaintiff-respondent.

SILAK, Judge.

Johnny E. Wavrick filed a motion to dismiss a charge of lewd and lascivious conduct with a minor in case No. 10523, and a separate motion to dismiss a charge that he violated the terms of his probation in case No. 8788. Both motions were based on Wavrick's assertion that he had been deprived of his right to a speedy disposition of the charges. The district court denied the motions and Wavrick was subsequently found guilty of lewd conduct with a minor in case No. 10523, and, based on the same conduct, in violation of the terms of his probation in case No. 8788. For his conviction of lewd conduct with a minor in case No. 10523, Wavrick received a sentence of fifteen years to life in prison. As a result of his probation violation in case No. 8788, Wavrick's probation was revoked and the court imposed an indeterminate sentence of twenty years for the underlying conviction in that case, which was also for lewd conduct with a minor. The court ordered that the sentences in the two cases run concurrently. Wavrick appeals the court's denial of his motions to dismiss, as well as the sentences imposed. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

In 1982 Wavrick pled guilty in case No. 8788 to one count of lewd and lascivious conduct with a minor, I.C. § 18–6607 (redesignated and amended in 1984 as I.C. § 18–1508), a felony. In exchange for his plea, the state agreed to dismiss two other counts of the same crime. On December 9, 1982, Wavrick was granted a withheld judgment and was placed on probation for a period of seven years.

On November 6, 1989, while he was still on probation in case No. 8788, a criminal complaint in case No. 10523 was filed, charging Wavrick with one count of lewd conduct with a minor, I.C. § 18–1508, a felony. As a result, Wavrick was also charged with violating the terms of his probation in case No. 8788. At his arraignment Wavrick entered a plea of not guilty to both the lewd conduct charge and the probation violation. Also at arraignment, Wavrick requested that the hearing on the probation violation charge not be held until after his trial on the lewd conduct charge. The district court subsequently scheduled a trial on the lewd conduct charge for March 12, 1990.

On the application of the defendant, on March 8, 1990, the state and Wavrick stipulated to postpone the March 12 trial date. Wavrick requested this postponement because his counsel had a conflicting trial scheduled. Eight days later, on March 16, Wavrick filed a "Waiver of Speedy Trial" with the court, which stated, in essence, that Wavrick's postponement of the original trial date was only a limited waiver of his statutory speedy trial right; that he was continuing to assert his speedy trial right under I.C. § 19–3501, but would extend the time for trial to July 1, about two weeks beyond the six-month deadline established by § 19–3501.

After the March 12 trial date was postponed, a new trial date was not set for a number of months. The record indicates that when the initial trial date was postponed, both parties anticipated that the trial would be rescheduled by July 1. For some unexplained reason the trial judge did not reschedule the trial, even though a letter was sent by the prosecutor requesting that the matter be rescheduled. In the meantime the parties continued to engage in unsuccessful negotiations in an attempt to reach a plea agreement. On September 7, the trial court held a pretrial conference. Following the pretrial conference both parties believed the trial court was going to schedule an evidentiary hearing on the probation violation charge for sometime in September. When the parties did not receive any notice of hearing the prosecutor sent another letter to prompt the court to set the matter for hearing. The probation violation hearing was scheduled for November 19. On or about November 18, the trial court postponed the probation violation hearing on its own motion, citing scheduling conflicts. Again the matter was not rescheduled, and on December 7, the prosecutor sent another letter to the court requesting that the matter be set for trial. A similar letter was sent by the prosecutor on January 3, 1991. About this time, the original trial judge retired from office and Wavrick's case was reassigned to another judge. On January 7, the parties received an order from the new judge scheduling a hearing for February 12, 1991.

On January 30, Wavrick filed two motions to dismiss. He moved to dismiss the lewd conduct charge in case No. 10523 alleging that he had been deprived of his right to a speedy trial. Wavrick also moved to dismiss the probation violation charge in case No. 8788 alleging he had been deprived of his right to a speedy hearing. After hearing argument on February 12, the district court denied both motions and scheduled a jury trial in case No. 10523.

Wavrick's jury trial commenced on March 19. On March 22, the jury returned a verdict of guilty against Wavrick on the charge of lewd conduct with a minor. By stipulation of the parties, the district court considered the evidence presented at trial in case No. 10523 to determine whether Wavrick had violated the terms of his probation in case No. 8788. On May 23, the district court conducted a sentencing hearing, at which time Wavrick received a sentence of fifteen years to life for his conviction in case No. 10523. At the sentencing hearing the court also revoked Wavrick's probation and entered a judgment of conviction in case No. 8788. For his conviction in case No. 8788 Wavrick received an indeterminate twenty-year sentence to run concurrently with his sentence in case No. 10523. Wavrick then brought this appeal.

## ISSUES ON APPEAL

Wavrick raises the following issues: (1) whether the district court erred in denying Wavrick's motion to dismiss for lack of speedy trial in case No. 10523; (2) whether the court erred in denying Wavrick's motion to dismiss for lack of a speedy hearing on the probation violation charge in case No. 8788; and (3) whether the court abused its discretion in imposing a fifteen year to life sentence for Wavrick's conviction in case No. 10523, and an indeterminate sentence of twenty years for Wavrick's conviction in case No. 8788. We will discuss each of these issues in turn.

## ANALYSIS

1. *Right to Speedy Trial in Case No. 10523.* Whether Wavrick was denied his right to speedy trial is a mixed question of law and fact. On appeal, when faced with mixed questions of law and fact, we defer to facts found upon substantial evidence, but we freely review the application of law to those facts. *Young v. State,* 115 Idaho 52, 54, 764 P.2d 129, 131 (Ct.App. 1988); *see also State v. Rusho,* 110 Idaho 556, 559, 716 P.2d 1328, 1331 (Ct.App.1986) (factual findings are reviewed for clear error, but whether the facts found demonstrate compliance with constitutional requirements is reviewed freely).

Wavrick claims that he was deprived of his right to speedy trial as guaranteed by Idaho statutes and the state and federal constitutions. The right to speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by Article I, section 13 of the Idaho Constitution. The Idaho Supreme Court has held that the speedy trial right guaranteed by Idaho's constitution is comparable to the protection provided by the federal Constitution. *State v. Russell,* 108 Idaho 58, 62, 696 P.2d 909, 913 (1985); *State v. Carter,* 103 Idaho 917, 921, 655 P.2d 434, 438 (1981). Our Supreme Court has further stated that the balancing test established by the United States Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), for determining whether the federal right to speedy trial has been violated, is consistent with the protection afforded by our own state constitution and statutes. *Carter,* 103 Idaho at 921, 655 P.2d at 438. In *Barker,* the Supreme Court refused to adopt a rule that would require a criminal matter to be tried within a certain number of days or months, concluding that the nature of the speedy trial right guaranteed by the Constitution neither requires nor permits the prescription of such a precise time period. *Barker,* 407 U.S. at 523, 92 S.Ct. at 2188. Instead, the Court held that an ad hoc balancing test should be employed in each case, in which the conduct of both the prosecution and the defense are weighed, to determine whether that particular defendant was denied his constitutional right to a speedy trial. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. The *Barker* Court identified four factors which courts should assess in determining whether a defendant has been deprived of the right to a speedy trial: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion or nonassertion of his right, and (4) the prejudice or lack of prejudice to the defendant resulting from the delay. *Id.*

The Court in *Barker* also stated that while the constitutional right to a speedy trial does not guarantee that a criminal matter will be tried within any specific time period, "[t]he States, of course, are free to prescribe a reasonable period consistent with constitutional standards." *Id.* In enacting I.C. § 19–3501, the Idaho legislature chose to establish such a time limit. I.C. § 19–3501 provides in pertinent part:

> The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases:
>
> .  .  .  .  .
>
> 2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the indictment or information is filed with the court.

■ To determine whether the defendant's statutory right to a speedy trial under I.C. § 19–3501 has been violated, we consider first whether the defendant has established a prima facie violation of the statute's requirements, i.e., that the defendant was not brought to trial within six months from the filing of the indictment or information, and that the trial was not postponed upon application of the defendant. Once the defendant has made this prima facie showing under I.C. § 19–3501, the burden shifts to the state to show that "good cause" existed for the delay. *State v. Hobson,* 99 Idaho 200, 202, 579 P.2d 697, 699 (1978). Whether good cause existed for the delay is to be determined by weighing the four factors articulated in *Barker. State v. Sindak,* 116 Idaho 185, 188, 774 P.2d 895, 898 (1989) (Johnson, J., concurring); *Russell,* 108 Idaho at 62, 696 P.2d at 913; *State v. Aberasturi,* 117 Idaho 201, 203, 786 P.2d 592, 594 (Ct.App.1990).

■■ We conclude that Wavrick has failed to make a prima facie showing under I.C. § 19–3501 that his statutory speedy trial right was violated. The record reflects that a trial date was scheduled for case No. 10523 within six months from the filing of the information, and that this trial date was postponed upon Wavrick's application. "[W]here a trial is postponed upon application of the defendant, the six-month deadline in I.C. § 19–3501 is not applicable," and the statutory inquiry is ended. *State v. Kysar,* 116 Idaho 992, 999, 783 P.2d 859, 866 (1989).

■ Wavrick asserts that his agreement to postpone the original trial date did not constitute a waiver of his speedy trial right under the statute because, in the "Waiver of Speedy Trial" document he filed with the court, he stated that postponement of the original trial date constituted only a limited waiver of his statutory speedy trial right, and that he continued to assert the right, but he would extend the six-month deadline by two additional weeks. We hold that Wavrick's attempt to limit the effects of his postponement of the trial by filing his limited "Waiver of Speedy Trial" was ineffectual. We note, initially, that this limited waiver was not filed until eight days after Wavrick had already had the trial postponed. Even more importantly, I.C. § 19–3501 does not allow defendants to postpone their trial and at the same time maintain their statutory speedy trial rights. The language of I.C. § 19–3501 is clear in providing that once the trial is postponed upon the application of the defendant, the defendant has waived the six-month time limit for speedy trial required by the statute. *Kysar*, 116 Idaho at 999, 783 P.2d at 866. Wavrick's attempt to preserve his statutory speedy trial right by filing the limited waiver was ineffectual once he had postponed the trial. This does not mean, however, that by postponing the original trial date Wavrick also waived his constitutional speedy trial rights. Having concluded that Wavrick's statutory speedy trial right was not violated, we must nevertheless consider whether his right to a speedy trial under the state and federal constitutions was violated. Wavrick's filing of the limited "Waiver of Speedy Trial" will be considered in performing this constitutional analysis.

■ As noted above, whether Wavrick's speedy trial right under the state and federal constitutions was violated is determined by reference to the four-factor balancing test articulated in *Barker*. *Russell*, 108 Idaho at 62, 696 P.2d at 913; *Carter*, 103 Idaho at 921, 655 P.2d at 438. The first factor considered under the *Barker*

balancing test is the length of the delay. "The length of delay is to some extent a triggering mechanism." *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. When the length of delay is long enough that it becomes presumptively prejudicial, the court will then inquire into the other factors that go into the balance to determine whether the defendant's speedy trial right was violated. *Id.* "Because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." 407 U.S. at 530–31, 92 S.Ct. at 2192. Under a constitutional analysis, the time for computing the delay begins on the date the complaint was filed. *Russell*, 108 Idaho at 62, 696 P.2d at 913; *State v. Lindsay*, 96 Idaho 474, 476, 531 P.2d 236, 238 (1975).[1] In this case, the criminal complaint was filed on November 6, 1989. Wavrick was not brought to trial until March 19, 1991, approximately sixteen months later. However, our Supreme Court has held that the actual period of delay considered by the Court is to be reduced by the amount of delay which is chargeable to the defendant. *Russell*, 108 Idaho at 62, 696 P.2d at 913. At the hearing on Wavrick's motions to dismiss the trial court found that one of the causes of the delay was the fact that Wavrick had the case postponed after it was set initially. It is unclear from the record, however, exactly how much of the delay in this case is attributable to that postponement. In any case, we conclude that the length of delay in this case is sufficient to "trigger" our inquiry. *See Lindsay*, 96 Idaho at 476, 531 P.2d at 238 (delay of fourteen months held sufficient to trigger inquiry).

The second factor we consider is the reason for the delay. The trial court found that there were various reasons for the delay in this case, including: (1) the fact that Wavrick had the trial initially postponed; (2) the initial judge's negligence in rescheduling the matter for hearing; (3) the fact that plea negotiations were ongo-

---

1. The time for computing the delay under I.C. § 19–3501 begins with the filing of the informa-

tion or indictment.

ing; (4) conflicts on the court's calendar; (5) and the fact that the judge initially assigned to the case left the bench, requiring reassignment of the case.

In *Barker*, the Court noted:

[D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531, 92 S.Ct. at 2192.

We agree with the district judge who ultimately tried this case that there was no valid reason to justify the delay in this case. The delay was only initially attributable to the defendant, who had the original trial date postponed. Clearly, the most significant cause for the delay was the trial court's failure to promptly reschedule a hearing in the matter. As stated above in *Barker*, a trial court's negligence is "[a] more neutral reason ... [and] should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* Our Supreme Court has refused to attribute delay caused by overcrowded courts to either the prosecution or the defense, stating that such a cause is neutral. *Russell*, 108 Idaho at 62, 696 P.2d at 913.

"In considering any delay attributable to the state, we focus on whether the state's activity impermissibly prolonged the proceeding through lack of diligence." *State v. Dillard*, 110 Idaho 834, 845, 718 P.2d 1272, 1283 (Ct.App.1986). In this case there is no contention that the prosecution engaged in dilatory tactics. In fact, the record shows that the prosecutor diligently attempted to prosecute the matter in a timely manner, and that the initial trial judge was prompted more than once by the prosecutor to set the matter for hearing. On the other hand, we note, as did the trial judge who considered Wavrick's motions to dismiss, the record is devoid of any motions brought by Wavrick to have the matter scheduled for trial.

The third factor to be considered is the defendant's assertion of his right to a speedy trial. With respect to this factor, we note that Wavrick did file a "Waiver of Speedy Trial" with the trial court on March 16, 1990, eight days after he postponed the initial trial date, purporting to limit the waiver of his speedy trial right to July 1. However, it is also notable that Wavrick did not object at the September 7 status conference to setting the matter for hearing. Nor did Wavrick object when the probation violation was set for hearing on November 19. Wavrick did not object to the delay in this case until he filed his motions to dismiss on January 30, 1991, seven months after his limited waiver expired, and more than two weeks after the new trial judge scheduled a hearing on the matter. As noted above, Wavrick never filed a motion to have the court set the matter for hearing. In *Barker*, the Court held that "[t]he defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant [has been] deprived of the right." *Barker*, 407 U.S. at 531–32, 92 S.Ct. at 2193. This conclusion is based on the Court's observation that "[t]he more serious the deprivation, the more likely a defendant is to complain." *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192.

The final, and perhaps most compelling, factor to be considered is prejudice to the defendant. *Russell*, 108 Idaho at 62, 696 P.2d at 913. In *Barker*, the Court described the prejudice factor as follows:

Prejudice, of course, should be assessed in the light of the interest of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility

that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. In this case, there was no oppressive pretrial incarceration because Wavrick was not incarcerated prior to trial. With respect to the second element of prejudice, we give some weight to the fact that Wavrick had this matter hanging over him during a pretrial period of approximately sixteen months. With respect to the final and most important element of prejudice, we note that Wavrick's counsel admitted at the hearing on the motions to dismiss that Wavrick's case was not prejudiced in any way by the delay. He further acknowledged that the delay in this case was more likely to prejudice the state's case than that of the defendant.

In balancing the four *Barker* factors we draw the following conclusions. While the length of the delay in this case was considerable, Idaho's appellate courts have held that delays of similar length did not amount to constitutional violations. *Russell, supra* (delay of nine months); *Lindsay, supra* (delay of fourteen months); *State v. Campbell*, 104 Idaho 705, 708, 662 P.2d 1149, 1152 (Ct.App.1983) (delay of twelve months). The cause of the delay in this case was attributable to Wavrick and the trial court, although principally to the trial court, a neutral source. The delay was in no way attributable to the conduct of the prosecutor. After Wavrick made an ineffectual attempt in March of 1990 to limit the waiver of his statutory speedy trial right, he did not again assert the right until ten months later. During this ten months Wavrick never objected, but agreed, to several attempts at rescheduling the matter for hearing. Finally, and most importantly, the record is clear that the prejudice caused by the delay in this case weighed more against the prosecution than it did Wavrick. Having carefully considered the facts and circumstances of this case in light of the four factors articulated in *Barker*, we conclude that Wavrick was not deprived of his right to a speedy trial

as guaranteed by the state and federal constitutions, and we affirm the district court's denial of Wavrick's motion to dismiss case No. 10523 for lack of a speedy trial.

*2. Right to Speedy Hearing in Case No. 8788.* Wavrick claims that he was denied the right to a speedy hearing on his probation violation in case No. 8788. He incorrectly asserts this right under the same analysis used to assert his right to speedy trial of case No. 10523. Idaho's statutory right to speedy trial does not apply to probation revocation proceedings, but only to criminal prosecutions including indictments, informations, and misdemeanor charges. I.C. § 19–3501. Nor do the speedy trial provisions of the state and federal constitutions apply to probation revocation proceedings, but only to "criminal prosecutions." U.S. Const. amend. VI; Idaho Const. art. I, § 13; *State v. Friedman*, 732 P.2d 1322, 1325 (Mont.1987). *See also, Carchman v. Nash*, 473 U.S. 716, 731 n. 10, 105 S.Ct. 3401, 3409 n. 10, 87 L.Ed.2d 516 (1985), *citing Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976).

A probationer may, however, be able to show a violation of his right to due process under the state and federal constitutions if he can show that the state has failed to act with due diligence, causing unreasonable delay. "A delay is not unreasonable, and a probationer is not entitled to complain that his federal or state due process rights have been denied, unless he is able to show substantial prejudice to his ability to answer the charge of probation violation." *State v. Teal*, 105 Idaho 501, 503–04, 670 P.2d 908, 1000–01 (Ct.App. 1983). As we concluded above, Wavrick has not shown either that the state failed to act with due diligence in this case, or that the delay was "unreasonable" because it substantially prejudiced his ability to answer the charge of probation violation. We also note that it was in accordance with Wavrick's request that the probation violation proceedings were conducted after the trial in case No. 10523. Accordingly, we affirm the trial court's order denying Wav-

rick's motion to dismiss the probation violation proceedings.

3. *Sentence Review.* Wavrick claims that the trial court abused its discretion in imposing a fifteen year to life sentence for his conviction of lewd conduct with a minor in case No. 10523, and in imposing a concurrent indeterminate sentence of twenty years for his conviction of lewd conduct with a minor in case No. 8788. Both of Wavrick's sentences are within the statutory maximum of life imprisonment for lewd conduct with a minor. I.C. § 18–1508. Appellate review of a sentence is based on an abuse of discretion standard. *State v. Wolfe,* 99 Idaho 382, 384, 582 P.2d 728, 730 (1978). If the sentence is not illegal, the defendant has the burden to prove that it is unreasonable, and thus a clear abuse of discretion. *State v. Broadhead,* 120 Idaho 141, 144–45, 814 P.2d 401, 404–05 (1991), *overruled on other grounds by State v. Brown,* 121 Idaho 385, 825 P.2d 482 (1992). A sentence may represent such an abuse if it is shown to be unreasonable upon the facts of the case. *State v. Nice,* 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982).

In reviewing Wavrick's sentence in case No. 10523, which was imposed under the Unified Sentencing Act, we treat the minimum period specified by the sentencing judge as the probable duration of confinement. I.C. § 19–2513; *State v. Sanchez,* 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989). Thus, we view Wavrick's actual term of confinement under that sentence as fifteen years. Wavrick's conviction in case No. 8788 dates back to 1982, prior to the enactment of the Unified Sentencing Act. With respect to Wavrick's sentence in case No. 8788, we treat one-third, or six years and eight months, of the twenty-year indeterminate sentence, as the presumptive measure of confinement. *Sanchez,* 115 Idaho at 777, 769 P.2d at 1149. Wavrick must establish that under any reasonable view of the facts, a fifteen-year period of confinement for lewd conduct with a minor was an abuse of discretion.

In reviewing a sentence, we conduct an independent examination of the record, focusing upon the nature of the offense and the character of the offender. *State v. Reinke,* 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982). Count I of the information in case No. 8788, to which Wavrick pled guilty, states that Wavrick:

> committed a lewd act upon or with the body ... of a child under the age of sixteen (16) years with the intent of arousing, appealing to or gratifying the lust or passion or sexual desires of such person or such minor, to wit: that the said Johnny Elmer Wavrick did rub his hand on the groin or penis of a twelve (12) year old boy.

Pursuant to a plea agreement, the state agreed to dismiss two other counts of lewd conduct with a minor based on acts committed with two other boys, ages ten and twelve. Wavrick was granted a withheld judgment in that case, and placed on probation for seven years. One of the conditions of Wavrick's probation was that he not be alone with any boys under the age of eighteen. Almost seven years later Wavrick was again charged and convicted of lewd conduct with a minor for having fondled the penis and buttocks of a young boy.

In pronouncing sentence upon Wavrick, the district judge noted and considered the mitigating factors of Wavrick's age and health problems. The judge also noted, however, that there were a number of aggravating factors in this case which led her to conclude that the only means of carrying out the primary responsibility of sentencing, the protection of society, was to sentence Wavrick to a long term of incarceration. The aggravating factors considered by the sentencing judge included: the gravity of the offenses committed by Wavrick against young children who are "trusting and helpless and innocent"; the very seri-

ous mental and emotional damage which Wavrick's crimes caused his victims; Wavrick's lengthy history of sexually abusing young boys—Wavrick admitted in 1972 to sexually abusing approximately twelve boys over a ten year period of time, in 1982 Wavrick pled guilty to one of three counts of sexually abusing young boys, and the abuse underlying Wavrick's latest conviction allegedly occurred numerous times over a period of months; Wavrick's failure to successfully avail himself of treatment programs during his long history of homosexual pedophilia; Wavrick's denial that he has a sexual abuse problem, which denial negates his potential for rehabilitation; the recommendation of the presentence investigator that Wavrick be incarcerated; and the fact that Wavrick had been granted probation in the past, which probation failed in that Wavrick committed the most recent offenses over a period of months while he was still on probation. Finally, the sentencing judge noted that the sentencing goals of retribution for offenses committed, general and specific deterrence of future offenses, and most importantly the protection of society, could only be achieved if Wavrick received a lengthy term of incarceration.

While we consider Wavrick's sentences to be harsh [2], we do not consider them to be unduly harsh or unreasonable in light of the well established goals of sentencing. In imposing sentence upon Wavrick, the sentencing judge in this case carefully reviewed the stated goals of sentencing in light of Wavrick's character [3] and the nature of his offenses. Having reviewed Wavrick's presentence report, his sexual abuse assessment, and the transcript of his sentencing hearing, we conclude that Wavrick has failed to show that the sentencing judge abused her discretion. Accordingly, Wavrick's sentences are affirmed.

The order of the district court denying Wavrick's motions to dismiss for lack of speedy trial and speedy probation revocation hearing, and the sentences imposed, are affirmed.

WALTERS, C.J., and SCHWARTZMAN, J., pro tem, concur.

---

**2.** There is no indication that Wavrick filed an I.C.R. 35 motion for a reduction of sentence.

**3.** Although Wavrick, 58 at the time of sentencing, had significant health problems, we will not reverse the sentence because of these problems.

Should these problems become an issue within the state's penal system, the Board of Correction and/or Board of Pardons and Parole will administratively address these health-related issues, and consider the possibility of a commutation of sentence.