11 P.3d 27

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Thomas LUNDQUIST, Defendant–Appellant.**

No. 23948.

Supreme Court of Idaho,
Twin Falls, March 2000 Term.

Aug. 28, 2000.

Rehearing Denied Oct. 23, 2000.

Nevin, Herzfeld & Benjamin, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Alan G. Lance, Attorney General; Alison A. Stieglitz, Deputy Attorney General, Boise, for respondent. Alison A. Stieglitz argued.

WALTERS, Justice.

Thomas Lundquist has appealed from a first-degree murder conviction for his participation in the murder of Fidela Tomchak. We affirm.

## BACKGROUND AND PRIOR PROCEEDINGS

Lundquist, Christopher Shanahan, and Benjamin Jenkins decided to run away to Las Vegas. The three teenagers planned to rob a local convenience store to get money for the trip and because Shanahan believed that shooting someone could help him become a member of a gang. After obtaining guns from Jenkins' house and ammunition from Lundquist's, the three drove to the Grant Store. Shanahan and Jenkins went into the store. Lundquist remained in the car with a shotgun to act as a lookout and "shoot anyone if they come." Jenkins' job was to distract the clerk so that Shanahan could shoot her. When they entered the store, Fidela Tomchak was stocking a cooler. Shanahan walked up and shot her in the back

of the head with his rifle. Jenkins grabbed beer from the cooler. Shanahan took cigarettes and about $200 in cash from the register. The three divided the items they had stolen and continued on their way to Las Vegas. They were eventually apprehended in Utah and brought back to Idaho.

Shanahan pled guilty to first-degree murder and robbery and Jenkins pled guilty to second-degree murder and robbery. Both agreed to testify against Lundquist. Lundquist was found guilty by a jury of first-degree felony-murder. On appeal, Lundquist argues that his rights to a speedy trial were violated, that the indictment was insufficient to give the court jurisdiction over the felony-murder charge, and that the verdict form did not contain essential elements of a felony-murder charge. Lundquist also argues that the court abused its discretion by imposing a life sentence with a minimum term of confinement of twenty years.

## DISCUSSION

### I. Speed Trial.

██ Lundquist initially argues that the case must be dismissed pursuant to I.C. § 19–3501(2). We disagree. Although it is clear that Lundquist was not tried within six months as required by § 19–3501, Lundquist's rights under § 19–3501 were not violated because he waived them. *See State v. Wavrick,* 123 Idaho 83, 844 P.2d 712 (Ct.App. 1992).

Lundquist was arraigned on January 4, 1996. His trial date was set for July 9, 1996, within the six-month period allowed under § 19–3501. On April 18, 1996, Lundquist made a motion to separate his trial from that of Shanahan and Jenkins. The court granted Lundquist's motion on May 31, 1996 because Shanahan and Jenkins had requested continuances and Lundquist was still asserting his right to a speedy trial. On June 14, 1996, Lundquist made a motion to substitute a new attorney for one of his two defense attorneys. With approximately three weeks until the trial, the court was concerned that Lundquist's new attorney would not have time to prepare. The court decided that it would allow Lundquist to substitute counsel if

Lundquist agreed to a continuance for counsel's preparation and if Lundquist waived his speedy trial rights. Lundquist and his counsel were concerned that by waiving the right to a speedy trial, Lundquist was at risk of being tried together with Shanahan and Jenkins. However, the court indicated that Lundquist's trial could be set for mid-August or early September and that Shanahan and Jenkins were not ready for trial and had requested a January 1997 trial date. Lundquist agreed to the continuance and waived his right to a speedy trial. The court granted Lundquist's motion to substitute counsel. Lundquist's trial was set for September 5, 1996.

On August 5, 1996, the state moved to continue the trial because it had just received a report from a defense psychologist and had not had time to prepare a response. Lundquist objected to a continuance. He argued that the state had sufficient time to prepare. He also indicated that he would not call the psychologist if it meant that there would be a continuance. The court granted the state's motion for a continuance and set the trial for January 8, 1997. On August 9, 1996, the state moved to consolidate the three trials. This motion was granted. Jury selection in Lundquist's trial began on January 29, 1997, one year and 25 days after his arraignment.

Lundquist has not challenged the continuance from July until September. He argues instead that the subsequently granted continuance from September until late January was impermissible because his waiver was limited to the first continuance.

Section 19–3501 does not allow for such a limited waiver. *State v. Wavrick, supra.* Once the trial has been postponed, the six-month statutory period no longer applies. *Id.* Furthermore, Lundquist knew when he agreed to the continuance of his July trial that a trial in August or September was not guaranteed:

THE DEFENDANT: I just have one question, Your Honor. If I waive my right, am I going to be back with the other two Defendants?

THE COURT: Not necessarily. But I'm not going to have you back me into a corner and say, Judge, I've caused this

problem and now to waive my rights, I'm going to say I've got to have a separate trial. Likely that's what's going to happen and I'm not going to be bound to that just to get you to waive a trial, a speedy trial. I mean, I think that the way this thing's come up, you created the problem, you've got to deal with it. I've dealt with it the only way I can deal with it, now you've go to make a decision.

. . .

[DEFENSE COUNSEL]: We have spoken to our client and we've spoken to his parents and the grandparents for our client. And we like the Court's proposition. Yes, we will waive our right to a speedy trial because of the Court's urging that we get this set in August, September, or even October and we think that's our best option. And we appreciate the Court continuing that and telling us that we'll shoot for that. And so, yes to clear up the record, we'll go along with that.

THE COURT: All right. Mr. Lundquist do you understand what your attorney said?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is that agreeable with you?

THE DEFENDANT: Yes.

Lundquist cannot rely upon the statutory six-month time period found in I.C. § 19–3501.

■■■ While the statutory right to a trial within six months cannot be revived once waived, Lundquist was also entitled to a speedy trial under both the state and federal constitutions. The court's decision to continue the trial until January must meet constitutional requirements. In order to determine whether Lundquist's constitutional rights have been violated, the Court employs the balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, (1972).[1] The Court must consider four different factors: 1) the length of the delay, 2) the reason for the delay, 3) the defendant's assertion of his or her speedy trial rights, and 4) the prejudice occasioned by the delay. Considering these factors, we conclude that Lundquist's constitutional rights were not violated.

## II. Information Charging Lundquist with Felony-murder.

■■■ Lundquist contends that the information did not include all the elements of felony-murder and was thus insufficient to invoke the district court's jurisdiction over the charge of felony-murder.

The amended information filed on February 5, 1997, provides:

| COUNT I | MURDER IN THE FIRST DEGREE |
| --- | --- |
| | I.C. §§ 18–4001, 02, 03(a)(d); 18–4004; 18–204 |

Said Defendant did willfully, unlawfully, deliberately, with premeditation and with malice aforethought, either directly or indirectly, by aiding or abetting, or encouraging the killing and murder of Fidela Tomchak, a human being, when she was shot in the head from which wound she died; *alternatively,*

Said Defendant did, either directly or indirectly, aid or abet, in the perpetration of or attempt to perpetrate a robbery or burgla-

ry in the commission of which Fidela Tomchak, a human being, died.

Idaho Code § 18–4003(d) defines felony-murder:

Any murder committed in the perpetration of, or attempt to perpetrate, aggravated battery on a child under twelve (12) years of age, arson, rape, robbery, burglary, kidnapping or mayhem is murder of the first degree.

**1.** The analysis set forth in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), for determining entitlement to a speedy trial under the federal constitution has been adopted by this Court to determine the same right under the Idaho Constitution. *See State v. Lindsay,* 96 Idaho 474, 531 P.2d 236 (1975).

Lundquist argues that the information is insufficient because the word "murder" does not appear in the alternative portion of Count I. Although inartful, we do not believe the language of Count I deprived the court of jurisdiction to hear the charge of felony-murder.

We first note that Lundquist did not challenge the information before the trial court. This is not fatal to Lundquist's challenge on appeal because the jurisdiction of the court is fundamental and can be raised at any time. *See* I.C.R 12(b)(2); *State v. Cahoon,* 116 Idaho 399, 775 P.2d 1241 (1989). However, "Informations which are tardily challenged are liberally construed in favor of validity.... An Information not challenged before a verdict will be upheld on appeal unless it is so defective that it does not, by any fair or reasonable construction, charge an offense for which the defendant is convicted." *State v. Robran,* 119 Idaho 285, 805 P.2d 491 (Ct.App.1991).

Under any fair and reasonable construction, the information in this case properly charged Lundquist with felony-murder. The words used in an information need not precisely track the language of the statute defining an offense. I.C. §§ 19–1303, –1417. Rather than using the word murder, the information charges that Fidela Tomchak died in the commission of a robbery. Murder is defined in I.C. § 18–4001 as "the unlawful killing of a human being with malice aforethought." With regard to felony-murder, the element of malice aforethought is satisfied by the fact that the killing was committed in the perpetration of a felony. *State v. Dunlap,* 125 Idaho 530, 533, 873 P.2d 784, 787 (1993). The question in this case is whether the allegation that Fidela Tomchak died in the commission of a robbery sufficiently conveys that Fidela Tomchak was killed unlawfully. Under the liberal construction appropriate at this stage of the proceedings, we hold that it does. Furthermore, Count I is entitled "MURDER IN THE FIRST DEGREE," and the information specifically cites I.C. § 18–4003(d) where felony-murder is defined.

We hold that the information was sufficient to charge Lundquist with felony-murder.

## III. The Verdict Form.

The initial jury verdict form in this case contained the following two questions:

Is the defendant guilty of a willful, deliberate or premeditated killing? YES:___NO:___

Is the defendant guilty based on the killing occurring during the commission or attempted commission of robbery or burglary? YES:___NO:___

After the jury began deliberations it sent out a question asking "if convicted of a robbery where a murder took place, is it automatically considered First Degree Murder?" The Court referred the jury to instructions 18–23, which correctly set forth the relevant law. The jury then sent a second note:

We read the Instructions to say that if someone is involved in a robbery where a murder takes place, we must find the Defendant guilty of First Degree Murder. But the verdict form gives us the option of saying no to First Degree Murder and still find the Defendant guilty of Robbery. Help. We have reviewed Instructions 18–23 and all other instructions.

The next morning the jury was provided with a new verdict form that contained the following question:

QUESTION NO. 1(A) – Is Thomas Lundquist guilty or not guilty of Murder in the First Degree in that Fidela Tomchak's death occurred in the commission of or attempted commission of a robbery or burglary?

NOT GUILTY_____

GUILTY_____

The jury marked question NO. 1(A) guilty and did not mark anything else on the verdict form.

Lundquist argues that the revised verdict form essentially directed a guilty verdict because there was no dispute that "Fidela Tomchak's death occurred in the commission of or attempted commission of a robbery or burglary[.]" While we agree that the revised verdict form does not set forth the elements of felony-murder, we do not agree that the verdict form directed a verdict of felony-murder.

The question of whether the jury was properly instructed is a question of law over which this court exercises free review.

*State v. Tomes,* 118 Idaho 952, 801 P.2d 1303 (Ct.App.1990). On appeal, the instructions must be viewed as a whole to determine whether the jury was properly and adequately instructed. *State v. Eastman,* 122 Idaho 87, 831 P.2d 555 (1992).

Lundquist concedes that the jury was correctly instructed on the elements of felony-murder; he only challenges the verdict form. Although the verdict form did not recite with particularity the elements of felony-murder, it was not in conflict with the elements instruction that instructed the jury that it must find the defendant not guilty if the state failed to prove any of the relevant elements. Consequently, we hold that the instructions when read as a whole properly instructed the jury regarding the elements of felony-murder.

### IV. The Sentence.

■ Lundquist was sentenced to the custody of the state board of corrections for the remainder of his life, with a minimum period of confinement of twenty years during which he would not be eligible for parole. Lundquist argues that a twenty-year fixed sentence as a minimum period of confinement is excessive in this case. He asks this Court to modify the sentence to a ten-year fixed term of confinement.

■ Where a sentence is within the statutory limits, the appellant bears the burden of demonstrating that it is a clear abuse of discretion. *State v. Hedger,* 115 Idaho 598, 604, 768 P.2d 1331, 1337 (1989). To constitute an abuse of discretion, the sentence must be shown to be excessive under any reasonable view of the facts. *State v. Broadhead,* 120 Idaho 141, 814 P.2d 401 (1991). A sentence is reasonable if at the time of imposition it appears necessary to achieve "the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to the given case." *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). For the purpose of sentencing review, this Court considers the minimum period of incarceration to be the probable measure of confinement. *State v. Sanchez,* 115 Idaho 776, 777, 769 P.2d 1148,

1149 (Ct.App.1989). Therefore, Lundquist must show that a minimum term of confinement of twenty years is unreasonable.

The trial court issued detailed findings of fact in support of the sentence imposed in this case. The court considered each of the four sentencing objectives:

*Protection of Society:*

This Court heard Mr. Shanahan and Mr. Jenkins offer eyewitness testimony, during the defendant's trial, about the involvement of each defendant in the robbery and murder. The court also carefully reviewed Dr. Nilsson's opinions concerning this defendant, and his potential for further violence.

Dr. Nilsson described defendant's lack of understanding of the consequences of the events on November 10, 1995, and indicated the defendant would need continuing structure in his life but that it was not his opinion that he would be involved in murder; and that as he gains maturity with the passage of time he will be less likely to deviate from societal norms.

A period of incarceration will allow time for further evaluation of defendant's potential for release, and will also allow time to adequately assess whether or not he presents a danger to society.

*Deterrence:*

Society has determined that the taking of another human life is the most serious violation of societal norms for which the most severe sanction – the loss of the offender's own life – may be imposed. Even so murders continue in our society and, alarmingly, they are too often are [sic] committed by teenagers. One must pause to wonder if anyone but the murderer is deterred by stiff sentences. However, such actions cannot be tolerated in any civilized society.

*Rehabilitation:*

Most sentencing hearings focus, almost exclusively, on this factor. Rehabilitation, however, is not entitled to any more weight in sentencing than the other factors mentioned above.

Because of Mr. Lundquist's age, and with the availability of ongoing counseling

and treatment, there is hope that he may eventually become a contributing member of society. Whether or not such a result can be obtained will only be determined after sufficient time has passed to make such an assessment.

*Punishment:*

The Court often hears that our system of justice is too easy on those who commit criminal offenses. In many instances state legislatures have required imposition of mandatory minimum sentences restricting the discretion of sentencing judges....

As a counterbalance to those seeking punishment alone to satisfy the demands of justice are others, including friends and family members of the defendant, requesting mercy. The most difficult and heart wrenching decisions of necessity arise in attempting to strike a proper balance. This is especially so when, as in this case, the very nature of the crime evidences no mercy to the victim, Fidela Tomchak or her family. Such circumstances clearly reveal the shortcomings inherent in any mortal judge's attempt to properly balance the scales of justice.

This Court is fully aware of the Tomchak family's belief that this defendant is as culpable as Shanahan in Mrs. Tomchak's murder. The prosecuting attorney is likewise convinced, and has argued forcibly for the same sentence in each case. If all things are equal between these defendants then an equivalent sentence is appropriate.

This court has also listened to the protestations of defendant's counsel, family, and the defendant himself that his involvement was not the same. They argue that imposition of the same sentence for Mr. Lundquist, as that imposed on Mr. Shanahan would be improper and unjust.

Understanding the significance of this dispute, and knowing that any judgment is no better than the knowledge supporting it, this Court has scoured the record in all three cases seeking knowledge on the issue. This was not done to vindicate the position of either party but to come to peace in my own mind with what the evidence actually proved.

Clearly Shanahan wanted to be like Tom Lundquist, he believed Lundquist had previously shot someone and that if he shot someone he could have the same respect Lundquist enjoyed. Shanahan never told Lundquist that he was thinking of killing Mrs. Tomchak to be equal with him but this twisted logic was a significant factor behind Shanahan's actions. Lundquist did discuss the robbery with Shanahan, and was aware of Shanahan's statements about shooting the clerk, but I can find no clear evidence in the record that he intentionally promoted Shanahan's decision to kill Mrs. Tomchak.

However, defendant was more than a mere observer of the events which culminated in Mrs. Tomchak's death. He had discussed the robbery which was going to take place; he knew Shanahan was taking a loaded firearm into the store; he heard Shanahan's threat to kill the clerk; he sat in the car as a lookout with a loaded firearm by his side and should then have understood the substantial likelihood that someone may be killed during the robbery he was participating in. Finally, following the robbery and murder he willingly shared in the stolen items and, commenting about the murder, stated that although he didn't think Shanahan would do it " it was cool that he did."

The maximum sentence available to the district court in this case was an order of execution as capital punishment. However the court concluded it was not an appropriate case to impose the death sentence. The court was then faced with the decision to impose a life sentence with a portion of required confinement without parole eligibility. Given the serious nature of this crime and the level of Lundquist's involvement, we cannot say that the district court abused its discretion by committing Lundquist to a life sentence with a minimum period of confinement of twenty years.

## CONCLUSION

The judgment of conviction and sentence are affirmed.

Chief Justice TROUT and Justices SILAK, SCHROEDER, and KIDWELL concur.

