69 P.3d 1052

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Timothy HANSEN, Defendant–Appellant.**

**No. 28223.**

Supreme Court of Idaho,
Boise, February 2003 Term.

May 1, 2003.

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant. Paul S. Sonenberg argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Lori A. Fleming argued.

KIDWELL, Justice.

Timothy Hansen (Hansen) appeals the district court's denial of his motion to suppress. He also appeals from his unified sentence of fifteen years for conspiracy to traffic in methamphetamine (meth) by manufacture and the district court's subsequent denial of his motion for reduction of sentence. The judgment of the district court is affirmed.

## I.

### FACTS AND PROCEDURAL BACKGROUND

On June 7, 2001, the Idaho State Police (ISP), based on a tip regarding a meth lab, performed surveillance at 7695 Pocatello Creek, Bannock County, Idaho. The police officers witnessed Hansen leave 7695 Pocatello Creek, where he lived in a bus parked next to the main residence. At approximately 2:05 p.m., the officers initiated a felony stop based on a felony arrest warrant issued by Box Elder County, Utah, and the fact that Hansen was driving without privileges (DWP). The ISP pulled Hansen over with a marked police car and ordered him out of his vehicle. The ISP arrested Hansen at gunpoint without incident, handcuffed him, and placed him in the back of the patrol car.

After placing Hansen in the patrol car, Detective–Sergeant John Ganske (Ganske) advised Hansen that the ISP received information that a meth lab was in operation at 7695 Pocatello Creek. Ganske asked Hansen if he knew anything about a meth lab. Hansen denied any knowledge of a meth lab. Ganske replied: "[i]f there's no meth lab at your house, then why don't we clear this up, you can escort us up to your house and you can walk us through and show us that there's

no meth lab at the house." Hansen refused Ganske's offer to "clear this up" unless Ganske agreed to meet some of Hansen's demands in exchange for his cooperation. Ganske advised Hansen that he had no control over the Utah warrant and that the DWP charge was the only charge he could help Hansen with, but only if Hansen agreed to cooperate. Hansen declined to cooperate, stating he did not want to snitch. Ganske advised Hansen that Ganske did not care whether Hansen went to jail, but if Hansen wanted to cooperate, the police would be glad to cooperate with him. Ganske then left Hansen alone in the back of the patrol car for an undetermined time, but less than fifty minutes, while he searched Hansen's vehicle.

After conducting an inventory search of Hansen's vehicle, Ganske returned to the patrol car to ask Hansen if he wanted any particular tow company to tow his vehicle. Hansen asked that the ISP not tow his vehicle. Hansen then initiated a conversation with Ganske regarding possible conditions for his cooperation in exchange for allowing the ISP to search his residence. Based on the terms demanded by Hansen, the ISP agreed to drive his vehicle back to his residence rather than tow it, to contact the Utah authorities regarding the felony warrant so Hansen could arrange to turn himself in, and to not file DWP charges. In exchange, Hansen consented to a search of his residence.

Three ISP officers escorted Hansen back to his residence. Upon arriving at Hansen's home, he was asked to sign an ISP permission to search form. The form was signed at approximately 2:55 p.m., fifty minutes after Hansen was stopped. The pre-printed paragraph just above Hansen's signature stated, "I am giving this written permission to these officers freely and voluntarily, without any threats or promises having been made, and after having been informed by said officer that I have the right to refuse this search and/or seizure." Ganske also signed the permission to search form.

Hansen placed limitations on his consent to search. He advised the officers that a Jerry Windle (Windle) owned the home at 7695 Pocatello Creek and Hansen was staying in a bus parked on Windle's property. Hansen told the officers they could not search Windle's home or any of the other structures on the property because he did not own them. Hansen told the officers he would walk them through the bus, but they could not search his personal belongings or "tear things up." He told the officers they could only look for things in plain sight. Officer Ganske advised Hansen that he could withdraw his consent at any time during the search.

Detective John Kempf (Kempf), a narcotics investigator, accompanied Ganske in the search of Hansen's bus. Kempf testified at trial that one of the first things he observed was a meth pipe with a brownish white residue, typical of meth use. Kempf also saw a digital scale and small zip lock bags, paraphernalia associated with meth production. The officers also noticed several items outside of Hansen's bus that indicated meth production. Kempf saw an Igloo cooler that appeared to be a homemade condenser. Kempf also saw a box containing Pyrex glassware, a Tupperware container with red phosphorus inside it, and a gallon container of iodine. Most of the glassware had iodine stains and some of the Pyrex pans contained a white, cakey substance associated with meth production.

Based on his observations, Kempf concluded that meth had been produced at 7695 Pocatello Creek. With this information, the ISP obtained a warrant to search the entire premises. The ISP found a meth lab inside the residence. On October 3, 2001, Hansen was charged, by information, with conspiracy to traffic in methamphetamine by manufacture pursuant to Idaho Code §§ 37–2732B(a)(3) and 37–2732(f).

Hansen filed a motion to suppress all evidence obtained during the warrantless search and the subsequent search with a warrant on the ground his consent was given under duress. After an evidentiary hearing, the district court denied his motion to suppress.

On December 20, 2001, a jury found Hansen guilty of trafficking in methamphetamine by manufacture. On January 16, 2002, the district court entered judgment on the jury's verdict, imposing a unified sentence of fifteen years, with five years fixed and ten years

indeterminate. On April 3, 2002, Hansen filed a motion for reduction of the sentence, which the district court denied. Hansen timely filed this appeal.

## II.

### STANDARD OF REVIEW

When reviewing an order to grant or deny a motion to suppress evidence, this Court accepts the district court's factual findings, unless clearly erroneous. *State v. McCall*, 135 Idaho 885, 886, 26 P.3d 1222, 1223 (2001). However, this Court exercises free review over the district court's conclusions as to whether, based on the facts of the case, the search and seizure was constitutional. *Id.*

The standard of review for a claim that a sentence is excessive and a motion for reduction of sentence is essentially the same. *State v. Burnight*, 132 Idaho 654, 660, 978 P.2d 214, 220 (1999). In determining whether a sentence is excessive, this Court focuses on whether the district court abused its discretion. *Id.* Likewise, this Court reviews the district court's decision to deny a motion for reduction of sentence for an abuse of discretion. *Id.*

## III.

### ANALYSIS

**A. The District Court Did Not Err When It Denied Hansen's Motion To Suppress.**

Hansen argues he was subjected to custodial interrogation without the benefit of *Miranda* warnings and, therefore, consent to search his home was coerced. In light of *Dickerson v. United States*, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (declaring *Miranda* a constitutional right), Hansen urges this Court to follow those courts that suppress physical evidence derived from a *Miranda* violation under the fruit of the poisonous tree doctrine.

The State argues *Miranda* has no application because Hansen was not subjected to interrogation and he voluntarily consented to a search of his bus. The State also argues,

even if Hansen's consent was invalid, he failed to provide any evidence that the allegedly invalid consent contributed to obtaining the subsequent warrant or that there was not probable cause to obtain the subsequent warrant. As a result, the State argues the evidence seized pursuant to the warrant is not subject to suppression.

**1. Hansen's consent was not obtained in violation of *Miranda*.**

*Miranda v. Arizona* requires that a person be informed of his or her Fifth Amendment privilege against self-incrimination prior to custodial interrogation; otherwise, incriminating statements are inadmissible. *State v. Doe*, 137 Idaho 519, 523, 50 P.3d 1014, 1018 (2002). A person is in custody whenever subjected to a restraint on his or her liberty in any degree similar to a formal arrest. *State v. Doe*, 130 Idaho 811, 814, 948 P.2d 166, 169 (Ct.App.1997) (citing *New York v. Quarles*, 467 U.S. 649, 655, 104 S.Ct. 2626, 2631, 81 L.Ed.2d 550, 556 (1984); *California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983)). A person is interrogated whenever subjected to express questioning or its functional equivalent, i.e. anything reasonably likely to elicit an incriminating response. *State v. Frank*, 133 Idaho 364, 370, 986 P.2d 1030, 1036 (Ct.App.1999) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300–02, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297, 307–09 (1980)).

In this case, Hansen was in custody. He was arrested at gunpoint in the course of a felony stop. He was handcuffed and placed in the back of a patrol car. However, Hansen was not subjected to interrogation when he consented to the search of the bus where he was living. When first arrested, Ganske asked Hansen about a meth lab in his home, which Hansen denied. Hansen also rejected Ganske and Kempf's request to consent to a search at that time. The officers then stopped interrogating Hansen and left him alone in the back of the patrol car.

After conducting an inventory search of Hansen's vehicle, Ganske returned to the patrol car and asked Hansen who he would like to tow his vehicle. Ganske's question to

Hansen regarding which company he wanted to tow his vehicle was not reasonably calculated to elicit any response, incriminating or otherwise, other than who Hansen wanted to tow his vehicle. Hansen then initiated a conversation with Ganske regarding his willingness to consent to a search of his home in order to avoid, among other things, his car being towed. This Court declines to accept Hansen's *Miranda* argument or decide whether the fruit of the poisonous tree doctrine extends to physical evidence derived from an illegal custodial interrogation because Hansen was not subjected to interrogation when he consented to a search of his home.

### 2. Hansen voluntarily consented to a search of his home.

 The Fourth Amendment of the United States Constitution protects citizens from unreasonable search and seizure. *State v. Salinas*, 134 Idaho 362, 364, 2 P.3d 747, 749 (Ct.App.2000) (quoting *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734, 739 (1961)). A search and seizure, conducted without a warrant issued on probable cause, is presumptively unreasonable. *State v. Brauch*, 133 Idaho 215, 218, 984 P.2d 703, 706 (1999) (citing *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 650–51 (1980)). However, a warrant may be excused in certain situations. *Id.* (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 445, 91 S.Ct. 2022, 2027, 29 L.Ed.2d 564, 570 (1971)). The government bears the burden of proving a warrant was excused. *Id.* If the government fails to prove the warrant was excused, any evidence obtained from the illegal search, including any subsequently discovered evidence derived from the original illegal search, is inadmissible. *Id.* at 219, 984 P.2d at 707 (citing *Segura v. United States*, 468 U.S. 796, 804, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599, 608 (1984)).

 Consent, when voluntarily granted by someone with authority, is one of the recognized exceptions to the warrant requirement. *Id.* (citing *United States v. Matlock*, 415 U.S. 164, 170, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 249 (1974)). Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *State v. Varie*, 135 Idaho 848, 852, 26 P.3d 31, 35 (2001) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 229, 93 S.Ct. 2041, 2048–49, 36 L.Ed.2d 854, 864 (1973)). This includes accounting for subtle coercive police questions and the subjective state of the party granting consent to search. *Id.* The fact that a defendant is in custody when he or she grants consent to search is not, by itself, sufficient to prove the consent was involuntary. *State v. Fee*, 135 Idaho 857, 862, 26 P.3d 40, 45 (Ct.App.2001).

When Hansen was stopped, he was immediately arrested, handcuffed, and placed in the back of a patrol car. Ganske and Kempf both questioned Hansen about the meth lab and asked for permission to search his home. Ganske testified that after Hansen rejected the request to search, "we bantered back and forth a little bit ... and I closed the patrol car door." When Ganske returned to the patrol car to inquire as to who Hansen wanted to tow his vehicle, Hansen offered to allow a search of his home if Ganske agreed not to tow his vehicle, to contact the Utah authorities so Hansen could turn himself in, and to not file DWP charges. Hansen's counsel argues the ISP officers initiated the conversation regarding what they could do for Hansen if he consented to a search of his home. However, the record reflects otherwise. The officers testified Hansen initiated the conversation regarding his giving consent in exchange for not towing his vehicle. The district court made no specific finding as to which party initiated this conversation, but the record supports that Hansen, not the ISP officers, initiated this conversation. Hansen then signed the ISP's consent to search form, which stated his consent was given voluntarily, and placed limitations on where and how the ISP officers could search. Ganske advised him that he could terminate his consent at any time. Considering all the facts and circumstances, the ISP's search of Hansen's bus, and subsequent seizure of evidence, satisfies constitutional requirements. Consequently, the district court did not err in denying Hansen's motion to suppress evidence.

**B. The District Court Did Not Abuse Its Discretion When It Sentenced Hansen To A Unified Term Of 15 Years Imprisonment With Five Years Fixed.**

Whenever a sentence is within the statutory limits, the defendant bears the burden of demonstrating the sentence is an abuse of discretion. *State v. Gertsch,* 137 Idaho 387, 396, 49 P.3d 392, 401 (2002) (quoting *State v. Lundquist,* 134 Idaho 831, 836, 11 P.3d 27, 32 (2000)). A sentence is reasonable if it appears necessary to achieve the primary objectives of protecting society or the related sentencing goals of deterrence, rehabilitation, or retribution. *Id.* A sentence is excessive if it is unreasonable under any rational view of the facts. *Id.* For the purpose of review, this Court considers the fixed term of confinement as the sentence imposed. *State v. Strand,* 137 Idaho 457, 460, 50 P.3d 472, 475 (2002). This Court will independently review the record and consider the nature of the offense, character of the offender, and the public's interest in determining whether a sentence is excessive. *Id.*

Under I.C. § 37–2732B(a)(3), "[a]ny person convicted of trafficking in methamphetamine and/or amphetamine by manufacturing shall be sentenced to a mandatory minimum fixed term of imprisonment of five (5) years and not to exceed life imprisonment. . . ." A mandatory minimum sentence is not subject to reduction by a district court because the sentencing requirements are mandatory. *See State v. Alexander,* 138 Idaho 18, 26, 56 P.3d 780, 788 (Ct.App.2002); *State v. Wright,* 134 Idaho 79, 84, 996 P.2d 298, 303 (2000).

Hansen claims probation would allow him to gain the help he needs to treat his addiction, to continue to care for his daughter, and to use his skills to remain employed. In light of these facts, Hansen argues the district court abused its discretion by imposing a harsh sentence, or alternatively, by not placing him on retained jurisdiction. The district court sentenced Hansen to the mandatory minimum required by I.C. § 37–2732B(a)(3) and it had no discretion to give Hansen a lighter sentence, as he urges. Additionally, the district court based the sen-

tence on Hansen's extensive criminal record, this is his third felony conviction in five years, and the seriousness of his crime, manufacturing a controlled substance. The district court's sentence of five years fixed is not excessive because five years is the minimum mandatory sentence for the crime Hansen was convicted of committing.

**C. The District Court Did Not Abuse Its Discretion When It Denied Hansen's Rule 35 Motion For A Reduction Of Sentence.**

A motion for a reduction of sentence under I.C.R. 35 is a plea for leniency. *State v. Strand,* 137 Idaho at 462, 50 P.3d at 478. If the original sentence is not excessive, the defendant bears the burden of showing it is excessive in light of new or additional information not considered by the sentencing court. *Id.* Hansen's sentence is not excessive because the district court was mandated by I.C. § 37–2732B(a)(3) to sentence Hansen to a minimum of five years. Additionally, Hansen has provided no new or additional information that his sentence was excessive as originally imposed. This Court finds the district court did not abuse its discretion in denying Hansen's Rule 35 motion because the sentence imposed was a minimum mandatory. Additionally, the sentence, as originally imposed, was not excessive.

## IV.

## CONCLUSION

*Miranda* does not apply in this case. The question the ISP asked Hansen, which led to his consent to search, regarding who he wanted to tow his vehicle was not reasonably calculated to obtain an incriminating response and thus not the type of interrogation prohibited by *Miranda.* The district court did not err by denying Hansen's motion to suppress because, based on all the facts and circumstances, Hansen's consent to search his home was given voluntarily and, as a result, satisfied constitutional requirements. Hansen's five-year sentence is not excessive considering the district court was required to levy that sentence as a minimum mandatory sentence. Furthermore, the district court

did not abuse its discretion by denying Hansen's motion for reduction of sentence.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS and EISMANN concur.