**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 35486/36033**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2010 Opinion No. 25** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: April 12, 2010** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **ALBERT R. MOORE,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Ronald J. Wilper, District Judge; Hon. Michael R. McLaughlin, District Judge.

Judgment of conviction for felony driving under the influence, <u>reversed</u> and <u>case remanded</u>; second judgment of conviction for felony driving under the influence, <u>remanded</u> for further proceedings.

Molly J. Huskey, State Appellate Public Defender; Heather M. Carlson, Deputy Appellate Public Defender, Boise, for appellant in Docket No. 35486. Heather M. Carlson argued.

Nevin, Benjamin, McKay & Bartlett LLP, Boise, for appellant in Docket No. 36033. Deborah Whipple argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

SCHWARTZMAN, Judge Pro Tem

Albert R. Moore appeals from his judgment of conviction for felony driving under the influence (DUI) in Case No. 35486, as well as another judgment of conviction for the same charge in Case No. 36033. The cases are consolidated on appeal. In regard to Case No. 35486, we reverse the judgment of conviction and remand for further proceedings. In regard to Case No. 36033, we remand for further proceedings.

1

# I.

# FACTS AND PROCEDURE

On September 3, 2006, Moore was arrested for DUI, Idaho Code § 18-8004, and for driving without privileges (DWP), I.C. § 18-8001.[1] Two days later, he entered a not guilty plea to the charges and trial was set for February 21, 2007. On January 23, 2007, a pretrial conference was held, during which Moore waived his right to a jury trial and a bench trial was scheduled for May 14, 2007.

On March 1, 2007, the state filed an amended complaint, charging Moore with an enhanced misdemeanor DUI on the basis that it was his second such offense within ten years. On May 11, 2007, the bench trial was reset for July 23, 2007. On July 23, however, the case was apparently set over to September 12, 2007, for a plea and sentencing hearing. Then, on September 12, the case was again reset for a jury trial to commence on December 14. At a pretrial conference the trial date was again changed to February 15, 2008.

On January 4, 2008, the state filed a second amended complaint elevating the misdemeanor DUI charge to a felony based on the state's allegation that Moore had twice previously been convicted of DUI within the preceding ten years--specifically in Idaho in 2006 and in North Dakota in 1999.[2] I.C. §§ 18-8004(1)(a), -8005(5).[3] On January 10, Moore filed a motion to dismiss on statutory and constitutional speedy trial grounds. After a preliminary

---

[1] On appeal, this charge is referred to as Case No. 36033.

[2] Idaho courts have sometimes described an element that elevates a charge from a misdemeanor offense to a felony offense as a "charging enhancement" or in similar language. *See generally State v. Weber*, 140 Idaho 89, 95, 90 P.3d 314, 320 (2004); *State v. Schmoll*, 144 Idaho 800, 172 P.3d 555 (Ct. App. 2007). This should not be confused with a "sentencing enhancement," i.e., one that authorizes or requires increased penalties for a misdemeanor or a felony in certain circumstances but does not, in the case of a misdemeanor, elevate the crime to a felony. *See generally State v. Anderson*, 145 Idaho 99, 175 P.3d 788 (2008); *State v. Gerardo*, 147 Idaho 22, 29-30, 205 P.3d 671, 678-79 (Ct. App. 2009); *State v. Leslie*, 146 Idaho 390, 195 P.3d 749 (Ct. App. 2008). Idaho's primary DUI statutes, Idaho Code §§ 18-8004, -8004A, -8004C and -8005, contain both types of enhancements.

[3] Pursuant to a 2009 amendment, Idaho Code § 18-8005 has been restructured. Idaho Code § 18-8005(5) is now I.C. § 18-8005(6). For purposes of this opinion we will refer to I.C. § 18-8005 and its subsections as they existed at the time of the charges in this case.

hearing was held, an information was filed charging Moore with felony DUI and DWP on March 26, 2008. Moore eventually filed a brief in support of his motion to dismiss on May 16; a hearing was held on June 12, after which the court allowed supplemental briefing on the issue. The court denied the motion, concluding there had been "good cause" for the delay.

Moore entered a conditional *Alford*[4] guilty plea to the DUI charge on December 1, 2008, retaining his right to appeal the denial of his motion to dismiss on speedy trial grounds and the issue of whether his North Dakota conviction could properly be used to enhance the DUI charge. On December 31, 2008, the court entered a judgment of conviction for felony DUI and sentenced Moore to six years imprisonment with one year determinate to run concurrently with the sentence imposed for his July 2008 DUI conviction. He was given credit for 848 days of incarceration served prior to entry of the judgment.[5] Moore now appeals, contending the court erred in denying his motion to dismiss on speedy trial grounds and that the North Dakota conviction was improperly utilized to enhance the DUI charge.

While the above charge was pending, on April 28, 2007, Moore was again arrested for driving while intoxicated.[6] He was eventually charged by information with operation of a motor vehicle while under the influence of alcohol with two or more prior convictions within ten years, I.C. §§ 18-8004, -8005(5), based on the 2006 Idaho and 1999 North Dakota convictions. Prior to trial, Moore filed a motion in limine, arguing that his North Dakota conviction could not be used to enhance the current charge because the statute under which he was charged did not substantially conform to Idaho's DUI statute. Anticipating a bifurcated trial whereby the jury would first determine whether Moore had been driving under the influence in the instant case, and if it answered in the affirmative, would then determine whether Moore had been convicted of two substantially conforming charges within ten years, the district court deferred ruling on the motion until the first question had been submitted to the jury. Eventually, the court denied the

---

[4]     *See North Carolina v. Alford*, 400 U.S. 25 (1970).

[5]     While not at issue on appeal, a review of the record indicates that between his arrest on September 3, 2006, and sentencing on December 31, 2008, Moore was incarcerated for a total of 470 days as a result of the two DUI charges.

[6]     This charge is the basis of Case No. 35486 on appeal.

3

motion in limine, deciding that the North Dakota statute was substantially conforming to the Idaho DUI statute.

The jury concluded that Moore was guilty of driving under the influence and the case proceeded to the second phase during which Moore objected to the admission of documents pertaining to his North Dakota conviction. The court overruled the objection and the jury ultimately found that Moore had been convicted of two other DUIs within the last ten years. On July 8, 2008, the court entered a judgment of conviction for felony DUI and sentenced Moore to six years imprisonment with one year determinate. Moore timely appealed and now raises the issue of whether the court erred in admitting and determining that the state could utilize the North Dakota conviction as a basis for enhancement.

## II.

## ANALYSIS

### A.    Case No. 35486

Moore advances several contentions on appeal in regard to Case No. 35486:  (1) the court erred in admitting the state's Exhibit 4 which included a copy of the judgment of conviction and a bench warrant for a probation violation because neither document had been properly certified or authenticated; (2) the state did not carry its burden in proving that the North Dakota conviction was constitutionally valid; and (3) the North Dakota statute forming the basis for the enhancement of the charge to a felony was not "substantially conforming" to I.C. § 18-8004. We address each issue in turn.

#### 1.    Authentication and certification

Moore argues the court erred in admitting the North Dakota judgment of conviction where the copy offered as evidence was not certified and therefore was not authenticated pursuant to the Idaho Rules of Evidence. Without this evidence, he contends, there was insufficient evidence to sustain his conviction for the DUI felony enhancement.

A judgment of conviction entered upon a jury verdict must be overturned on appeal where the state did not produce admissible evidence upon which a jury could have found that the state sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Cortez*, 135 Idaho 561, 562, 21 P.3d 498, 499 (Ct. App. 2001). A trial court has broad discretion in the admission of evidence, and its judgment will be reversed only when there has been an abuse of that discretion. *State v. Howard*, 135 Idaho 727, 731-32, 24 P.3d 44, 48-49

4

(2001). Specifically, whether sufficient foundation has been laid for the admission of evidence is committed to the discretion of the trial court. *State v. Glass*, 146 Idaho 77, 81, 190 P.3d 896, 901 (Ct. App. 2008).

During the second portion of the trial when the enhancement of the DUI charge to a felony was at issue, the state moved for admission of Exhibit 4 consisting of three documents, apparently obtained from the North Dakota court, pertaining to Moore's 1999 DUI conviction in that state. The first page was a copy of the judgment of conviction, the second page was a copy of the uniform complaint and summons and was the only page to bear certification (in the form of a seal and a signed averment that the copy was authentic), and the third page was a copy of a bench warrant for a probation violation that was issued several months after the conviction. Moore objected to the exhibit's admission, contending that the judgment of conviction had not been certified as there was "no state seal on the conviction itself" and that the warrant was irrelevant to the issue at hand. The state argued at trial, and continues to do so here, that the judgment was sufficiently authenticated where the second page of the packet bore the requisite certification, the documents all bear the same or similar case numbers, and the prosecutor had represented that the state had received all three documents "in a single envelope together." Without discussion of the authentication issue, the court overruled the objection and admitted the exhibit.[7]

Pursuant to Article IX of the Idaho Rule of Evidence, evidence must be authenticated before it may be admitted. Specifically, I.R.E. 901 states, in relevant part, that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The admission of the contents of writings is further governed by Article X. Rule 1002 states, in relevant part, that in order "[t]o prove the content of a writing . . . the original writing . . . is required, except as otherwise provided in these rules . . . ." An exception is made to this requirement for public records, as set forth in Rule 1005 which provides:

---

[7] The court noted that the bench warrant was admitted for the limited purpose of proving that Moore had pleaded guilty to a violation of the relevant North Dakota statute. In view of our decision here, we need not address the correctness of this ruling to admit the bench warrant.

5

(a) Proof of Public Record.  The contents of an official record . . . if otherwise admissible, may be proved by copy, certified as correct in accordance with Rule 902 . . . .

Rule 902 states, in relevant part, that

[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

. . . .

(4) Certified Copies of Public Records.  A copy of an official record . . . certified as correct by the custodian or other person authorized to make the certification . . . .

Recently, in *State v. Korn*, 148 Idaho 413, 224 P.3d 480 (2009), the Idaho Supreme Court addressed the application of Title IX and Title X of the Idaho Rules of Evidence as they pertain to the admission of public records.[8]  There, Korn had attempted to introduce copies of two orders--purportedly from the court presiding over his bankruptcy case--by testifying that he recognized both documents as orders of the bankruptcy court.  The state objected on the basis that the documents were not certified, authentic copies and the magistrate court agreed.  On appeal, the Idaho Supreme Court noted that based on the pertinent rules in Titles IX and X of the Idaho Rules of Evidence, Korn could have been excused from I.R.E. 1002's requirement that he produce the original orders if his copies of those orders were certified in accordance with I.R.E. 902.  Since the copies of the alleged orders were not certified, the Supreme Court concluded that the magistrate court had acted within the bounds of its discretion and consistently with relevant legal standards in excluding Korn's exhibits.  *Korn*, 148 Idaho at 417, 224 P.3d at 484.

At oral argument, the state admitted that *Korn* significantly diminishes the efficacy of its argument that the North Dakota documents were properly admitted.  Here, the only certification appearing in the packet is an upside down stamp on the uniform citation.  This purported certification makes no reference to the other attached pages or otherwise evidences an intent to certify all three documents which comprise the exhibit.  Thus, in accordance with Korn's holding that public records must both be authenticated pursuant to Article IX and consist either of the original documents or certified copies, we are bound to conclude that the court erred in admitting

---

[8]     The Court specifically noted that judicial records are considered "public records" under the Idaho Rules of Evidence.  *Korn*, 148 Idaho at 417 n.3, 224 P.3d at 484 n.3.

the copies pertaining to Moore's North Dakota conviction.[9]  As such, since this was the sole evidence regarding that issue, we must vacate Moore's conviction for the DUI felony enhancement.

We now must determine the remedy appropriate for such an error.  At oral argument, the state contended that if we were to decide that Exhibit 4 was improperly admitted, we should remand the case and order a new trial on the felony enhancement.  While the Double Jeopardy Clause of the Fifth Amendment, as interpreted by the United States Supreme Court, protects against a second prosecution for the same offense after conviction, *United States v. DiFrancesco*, 449 U.S. 117, 129 (1980); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), it is well settled that where a defendant has sought and obtained reversal of a conviction on grounds *other than* the insufficiency of the evidence, double jeopardy principles do not prevent a second trial.  *Price v. Georgia*, 398 U.S. 323 (1970); *State v. Byington*, 139 Idaho 516, 518, 81 P.3d 421, 423 (Ct. App. 2003); *State v. Avelar*, 124 Idaho 317, 321 n.2, 859 P.2d 353, 357 n.2 (Ct. App. 1993).  Thus, we must determine whether our conclusion that evidence was erroneously admitted constitutes a reversal on sufficiency of the evidence such that retrial is precluded.  More specifically, as framed in a leading criminal procedure treatise, the issue when reviewing the sufficiency of the evidence for the conviction is whether an appellate court should take into consideration all evidence offered at trial, or should exclude the erroneously admitted evidence in its analysis.  6 WAYNE R. LAFAVE, CRIMINAL PROCEDURE 651 (3d ed. 2007).  LaFave continues:

> *Lockhart v. Nelson* [488 U.S. 33 (1988)] explained that even in a case requiring remand due to the erroneous admission of evidence, all of the evidence admitted

---

[9]  Even aside from the lack of certification on the judgment of conviction, various other problems and inconsistencies existed.  For example, the judgment contains no reference to the North Dakota statute under which the conviction was obtained.  In addition, comparing the documents to each other--as the state argues authenticates them--is not conclusive.  The uniform complaint and summons and the judgment contain some differing case numbers and while the uniform complaint states the charge as "actual physical control of a motor vehicle," the judgment states that Moore pleaded guilty to the offense of "drove or in actual physical control of [a motor vehicle]."  Finally, the prosecutor's vouching for the authenticity of the documents by stating that the three documents had been received together in one packet from the North Dakota courts is troubling.  It is well established that no person may testify in court unless first placed under oath.  I.R.E. 603.  *See State v. Gerardo*, 147 Idaho 22, 26, 205 P.3d 671, 675 (Ct. App. 2009).

must be considered. Reversals based on "such ordinary trial errors" as the "incorrect receipt or rejection of evidence," remain subject to the *Ball* rule [based on *Ball v. United States*, 163 U.S. 662 (1896), which holds that double jeopardy does not bar reprosecution where a conviction is reversed on grounds other than insufficiency of the evidence]. Where the evidentiary insufficiency exists only because of the appellate court's initial conclusion that there was error in admitting prosecution evidence, the reversal, under the logic of *Burks* [*v. United States*, 437 U.S. 1 (1978), which held that the *Ball* rule did not apply where appellate reversal was based on insufficiency of the evidence to uphold the conviction], should be characterized simply as one based upon a "trial error." The "basis for the *Burks* exception to the general rule is that a reversal for insufficiency of the evidence should be treated no differently than a trial court's granting a judgment of acquittal at the close of all the evidence." Since a "trial court in passing on such a motion considers all of the evidence it has admitted," to "make the analogy complete it must be the same quantum of evidence which is considered by the reviewing court" in determining whether double jeopardy bars a retrial. Thus *Burks* should bar a retrial only if all of the admitted evidence, even erroneously admitted evidence, was insufficient. Where that is not the case, allowing a retrial following reversal is consistent with giving the prosecution "one fair opportunity to offer whatever proof it could assemble." Had the trial court excluded the inadmissible evidence, the prosecution would have been given the opportunity to introduce other evidence on the same point, and allowing a retrial where the proof is deemed insufficient on appeal only because that inadmissible evidence merely recreates the situation that would have existed if not for the trial court's error. As one court put it, the appellate court applying *Burks* is "assessing the legal sufficiency of the evidence not at the trial that will be, but at the trial that was. . . ."

*Id*. at 651-52 (internal footnotes omitted).

Here, we find the *Lockhart* approach persuasive and thus, taking into account the improperly admitted judgment of conviction, there was sufficient evidence for a jury to conclude that Moore had previously been convicted of two DUI offenses. As a result, we cannot say that retrial would be barred by double jeopardy. Given this conclusion, we proceed to address the remaining arguments raised by Moore for guidance in the event there is a new trial.[10]

## 2. Constitutional validity of conviction

We next address Moore's contention that the court erred in allowing the North Dakota conviction to form the basis of his felony charge, because the state failed to establish a prima

---

[10] Of course, on remand the state could simply request that an amended judgment of conviction be entered on the reduced charge of an enhanced DUI misdemeanor instead of pursuing a new trial on the felony enhancement.

facie showing that his guilty plea to the North Dakota charge was obtained with a knowing, voluntary waiver of his Sixth Amendment right to counsel.

In *State v. Beloit*, 123 Idaho 36, 844 P.2d 18 (1992), the Idaho Supreme Court set forth the respective burdens for a constitutional challenge to a prior conviction that is used to enhance a DUI charge from a misdemeanor to a felony.[11] Specifically, the court held that the state bears the burden of making a "prima facie showing of the validity of a prior conviction used to enhance a pending crime." *Id*. at 37, 844 P.2d at 19. Once the state meets its burden, the burden of *going forward* with proof that the conviction was constitutionally defective is placed on the defendant. *Id*.

Thereafter, in *State v. Coby*, 128 Idaho 90, 92, 910 P.2d 762, 764 (1996), the Court modified its holding in *Beloit*, directing that the state must initially establish a prima facie showing of only the *existence* of the prior convictions as opposed to their validity. *See also State v. Warren*, 135 Idaho 836, 840, 25 P.3d 859, 863 (Ct. App. 2001); *State v. Miller*, 131 Idaho 288, 294, 955 P.2d 603, 609 (Ct. App. 1997). Such a showing requires only that the state produce copies of judgments of conviction or other evidence of the existence of the convictions. *Coby*, 128 Idaho at 92, 910 P.2d at 764. It is only after this burden is met by the state, the Court noted, that the *Beloit* analysis is applied. *Id*. The defendant would then have the burden of going forward with some evidence that the conviction was constitutionally defective. *Id*. In turn, once the defendant raises a triable issue of fact concerning whether he was accorded his right to counsel, or that he did not properly waive the right, the burden of proof is then upon the state to rebut the defendant's evidence and convince the court that no violation of the defendant's rights occurred. *Beloit*, 123 Idaho at 37, 844 P.2d at 19; *see also Parke v. Raley*, 506 U.S. 20, 34 (1992) (approving of a similar scheme utilized in Kentucky).[12]

---

[11] We note that the case law in Idaho concerning the burdens of proof borne by the parties in regard to a collateral attack on a prior conviction used as an enhancement was decided prior to our Supreme Court's decision in *State v. Weber*, 140 Idaho 89, 90 P.3d 314 (2004), in which the court held a defendant's due process right to collaterally attack a conviction utilized for such a purpose is limited to instances where the violation of right to counsel is alleged. Thus, we follow the case law speaking to burdens of proof so far as it applies to allegations of denial of the right to counsel only. *See Custis v. United States*, 511 U.S. 485, 496 (1994).

[12] Our Supreme Court noted in *Weber* that several important considerations support limiting collateral attacks on prior convictions--namely the "ease of administration" and "the interest in

9

Here, the state presented what was ostensibly a copy of the judgment of conviction for Moore's North Dakota DUI. In this manner, the state carried its burden to make a prima facie showing of the existence of the conviction. Thus, under *Beloit*, the burden of going forward with some evidence that the conviction was constitutionally defective due to a violation of his right to counsel was on Moore. Moore contends that he raised a triable issue of fact concerning whether he was accorded and waived his constitutional right to counsel based upon the face of the judgment, which indicated he had appeared for sentencing without counsel. Thus, the question we must resolve is whether Moore satisfied his burden of coming forward with evidence establishing a constitutional challenge to the validity of the judgment.

While there remains little guidance as to "what circumstances shift the burden from the defendant back to the state," *see Miller*, 131 Idaho at 295, 955 P.2d at 610, we must conclude that Moore did not do so here. The *Coby* Court explicitly required that "evidence" be presented that a conviction was constitutionally defective in order to shift the burden back to the state. Here, there was no evidence presented on the point--rather there was only argument asserted by counsel that, on the face of the judgment, the state had not carried its burden to prove that the conviction was constitutionally valid. While we do not define the outer-boundaries of the evidence that a defendant need introduce to shift the burden, we do conclude that under *Coby*, counsel's mere assertions, unsupported by some evidence introduced into the record, are not sufficient to raise a triable issue. The sole fact of proceeding without counsel, the right to which can be waived, does not constitute some evidence of a constitutional defect. Accordingly, we conclude that the district court did not err in this respect in admitting the judgment of conviction.

### 3. Substantially conforming

Moore also contends that the court erred in allowing his North Dakota conviction to form the basis of an enhanced DUI charge, because the North Dakota statute was not "substantially

---

promoting the finality of judgments." The Court quoted *Custis's* warning that "'[i]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the orderly administration of justice." *Weber*, 140 Idaho at 93, 90 P.3d at 318 (quoting *Custis*, 511 U.S. 485). Furthermore, the Court noted that "[b]y challenging the previous conviction, the defendant is asking a district court 'to deprive [the] [state-court judgment] of [its] normal force and effect in a proceeding that ha[s] an independent purpose other than to overturn the prior judgment[t].'" *Id*.

conforming" to the Idaho DUI statute. In Idaho, a charge under I.C. § 18-8004 for operating a motor vehicle while under the influence of alcohol and/or drugs may be enhanced to a felony pursuant to Idaho Code Section 18-8005(5) which provided, in pertinent part:

> Except as provided in section 18-8004C, Idaho Code, any person who pleads guilty to or is found guilty of a violation of the provisions of section 18-8004(1)(a), (b) or (c), Idaho Code, who previously has been found guilty of or has pled guilty to two (2) or more violations of the provisions of section 18-8004(1)(a), (b) or (c), Idaho Code, *or any substantially conforming foreign criminal violation*, or any combination thereof, within ten (10) years, notwithstanding the form of the judgment(s) or withheld judgment(s), shall be guilty of a felony . . . .

(emphasis added). Section 18-8005(8) elucidated what constituted a substantially conforming foreign criminal violation, stating that:

> For the purpose of subsections (4), (5), and (7) of this section . . . a substantially conforming foreign criminal violation exists when a person has pled guilty to or has been found guilty of a violation of any federal law or law of another state . . . substantially conforming to the provisions of section 18-8004, Idaho Code. . . .

In relevant part, I.C. § 18-8004, under which Moore was charged, states:

> (1)(a) It is unlawful for any person who is under the influence of alcohol . . . or who has an alcohol concentration of 0.08, as defined in subsection (4) of this section, or more, as shown by analysis of his blood, urine, or breath, to drive or be in actual physical control of a motor vehicle within this state, whether upon a highway, street or bridge, or upon public or private property open to the public.
>
> . . . .
>
> (5) "Actual physical control" as used in this section, shall be defined as being in the driver's position of the motor vehicle with the motor running or with the motor vehicle moving.

As relevant here, the North Dakota statute upon which Moore's previous conviction was based, stated that:

> 1.    A person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:
>> a.    That person has an alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving or being in actual physical control of a vehicle.
>> b.    That person is under the influence of intoxicating liquor.

11

N.D. Cent. Code § 39-08-01 (1997).

In determining that the North Dakota statute was substantially conforming to the applicable Idaho statute the district court stated:

> As I read those two statutes together, and not going outside of the statutory language, I do not find that there's any ambiguity. And it appears to the court, and I do find, that the law does not require exact correspondence between foreign and Idaho DUI statutes for purposes of enhancements. And I do find that the North Dakota statute was substantially conforming to the Idaho DUI statute.

Moore further argued below that the North Dakota statute was not substantially conforming because while Idaho does not differentiate between the act of driving and being in "actual physical control," the North Dakota statute does create a distinction in N.D. Cent. Code § 39-08-01(4)(e) (1997) which stated that

> The execution or imposition of sentence under this section may not be suspended or deferred . . . except that a fine or a sentence of imprisonment may be suspended in any one of the following instances:
> (1) Upon conviction of being in actual physical control of a motor vehicle in violation of this section or equivalent ordinance. . . .

On this basis, Moore contended that driving under the influence of alcohol and being in actual physical control of the vehicle under the influence of alcohol were different offenses in the state of North Dakota and thus, even on the face of the statute, were not substantially conforming to Idaho's statutory scheme. The district court also rejected this analysis.

On appeal, Moore continues to contend that the two statutes are not substantially conforming, arguing that:

> [a]lthough Mr. Moore was charged with being in actual physical control of a vehicle while under the influence in North Dakota, he might not have been guilty of driving or being in actual physical control of a vehicle while under the influence in Idaho because (1) Idaho's definition of actual physical control is much narrower, (2) in North Dakota one can commit the offense on private property, and (3) in North Dakota if the defendant's BAC is between .05 and the legal limit the defendant can still be prosecuted for driving or being in actual physical control while under the influence.

As the state points out, Moore argues that to be substantially conforming, a foreign DUI statute may never encompass conduct that would not be illegal under Idaho's DUI scheme. In addition, Moore's arguments would require this Court to review how another state's statute has been interpreted by the courts of that state to determine if the statute is substantially conforming.

Whether a foreign criminal violation is substantially conforming is a question of law to be determined by the court. I.C. § 18-8005(8). In addition, the construction and application of a statute is also a question of law. *State v. Shock*, 133 Idaho 753, 755, 992 P.2d 202, 204 (Ct. App. 1999). As such, we exercise free review over the district court's determination on this issue. *State v. O'Neill*, 118 Idaho 244, 245, 796 P.2d 121, 122 (1990).

In *State v. Schmoll*, 144 Idaho 800, 172 P.3d 555 (Ct. App. 2007), this Court examined whether the defendant's prior felony conviction in Montana for driving under the influence was substantially conforming to the Idaho DUI statute such that it could form the basis for enhancing a DUI charge in Idaho to a felony. On appeal, Schmoll had argued that he could not be charged with felony DUI in Idaho when the basis of the enhancement is a prior felony conviction from Montana that would not have been a felony conviction if it had occurred in Idaho. In deciding this issue of first impression, we stated that our legislature had expressly provided that the focus of the comparison should be on the elements of the statutes and not the specific conduct giving rise to the prior violation. *Id.* at 803, 172 P.3d at 558 (citing I.C. § 18-8005(8)). We then noted that substantial conformity does not require exact correspondence between the two statutes, stating that "Black's Law Dictionary defines substantially to mean '[e]ssential; without material qualification . . . in substance.' BLACK'S LAW DICTIONARY 1428 (6th ed.1990). Conformity means '[c]orrespondence in . . . use; agreement; harmony; congruity.' *Id.* at 300." *Schmoll*, 144 Idaho at 804, 172 P.3d at 559.

In comparing the Montana and Idaho statutory schemes, we noted differences in treatment of BAC test results and in the description of the level of impairment. *Id.* Nevertheless, in regard to whether the Montana statute was substantially conforming, we concluded:

> Although Idaho and Montana use the BAC test results differently, they both prohibit the same essential conduct--driving while under the influence of alcohol. Proving that a person is under the influence absent a BAC test requires a greater degree of impairment in Montana than in Idaho, since in Idaho the ability to drive need only be impaired "to the slightest degree," while in Montana, the ability to drive "safely" is the quality that must be diminished. Impairment to the slightest degree is an equal or lesser standard than the diminished ability to drive safely test used by Montana; thus Montana's higher standard surpasses the elements required for a violation in Idaho. These two statutes frame their prohibitions using the same language, requiring substantially conforming elements to be met to sustain a violation.

*Id.* In regard to Schmoll's specific argument on appeal that his Montana felony could not conform to an Idaho felony conviction because it would not have been a felony if it had been

13

prosecuted in Idaho, we rejected that contention, noting that the determination of whether the Montana prohibition of driving under the influence substantially conforms to the Idaho prohibition of the same is "entirely independent" from the consideration of whether the violation results in a misdemeanor charge or a felony charge.

In examining this case in light of *Schmoll*, we are faced with several questions, the first being whether we should take into account other states' case law interpreting their DUI statutes when determining whether the elements of a particular statute substantially comply with I.C. § 18-8004. Moore points to our citation in *Schmoll* to a Montana case when defining what "diminished" means in the context of Montana's DUI statute. Moore's reliance on this passing reference to contend that Idaho courts are required to take into account how each state's individual DUI statutes have been interpreted is misplaced. The major thrust of *Schmoll's* analysis of the issue compares the *plain language* of the two statutes. *See State v. Scott*, 135 Idaho 457, 458-59, 19 P.3d 771, 772-73 (Ct. App. 2001) (noting the well-settled principle of statutory interpretation that the clearly expressed intent of the legislature must be given effect, thus leaving no occasion for statutory construction where the language of a statute is plain and unambiguous). Doing the same with the Idaho and North Dakota statutes indicates that they contain very similar language in that the criminalized conduct in both is driving or being in "actual physical control" of a vehicle with a blood alcohol level of .08 or above (in Idaho) or .10 or above (in North Dakota) while on a "highway, street or bridge, or upon public or private property open to the public" (in Idaho) or on a "highway or upon public or private areas to which the public has a right of access for vehicular use" (in North Dakota). As we stated in *Schmoll*, 144 Idaho at 804, 172 P.3d at 559, both statutes "prohibit the same essential conduct--driving while under the influence of alcohol" and "frame their prohibitions using the same language, requiring substantially conforming elements to be met to sustain a violation."

We also do not believe that examining the various interpretations given DUI statutes by respective state courts--which, on their face appear to be substantially complying with I.C. § 18-8004--achieves the goal of I.C. § 18-8005(8) as interpreted by *Schmoll* which is that the focus of the inquiry is the elements of the statute as opposed to the underlying conduct. Under the analysis proposed by Moore, courts would be required to imagine any conceivable conduct that

14

may be committed by a hypothetical defendant to determine criminality in Idaho.[13] Thus, the focus would be shifted from the actual elements of the statutes--as *Schmoll* determined was required by I.C. § 18-8005(8)--to what conduct may or may not be criminalized under each, an approach rejected in *Schmoll*. *Id.* at 803, 172 P.3d at 558.

Moore also appears to argue that to be "substantially conforming," another state's DUI statute may never encompass conduct that would not be illegal in Idaho. Again, we note that such a strict interpretation would deviate from the general thrust of *Schmoll* and I.C. § 18-8005(8), as well as run counter to the legislature's clear intent evidenced by using the term "substantially conforming," as opposed to a dictate that the statutes be exactly the same.

Accordingly, examining the plain language of each statute, we conclude that the North Dakota statute was substantially conforming to the Idaho DUI statute such that Moore's North Dakota conviction could properly form the basis for an enhancement of his DUI charge. Thus, the district court did not err in this respect.

**B.      Case No. 36033**

In the second case consolidated in this appeal, Moore again challenges the use of his North Dakota conviction as the basis for enhancement of his DUI charge, incorporating by reference the assertions made in the appellant's brief for Case No. 35486. In addition, Moore contends that both his constitutional and statutory speedy trial rights were violated by the delay in prosecution occurring in this case.

**1.      Speedy trial**

Moore argues on appeal that the court erred in denying his motion to dismiss on statutory and constitutional speedy trial grounds. Since it is a stricter standard, we will address the statutory speedy trial issue. *State v. McKeeth*, 136 Idaho 619, 626, 38 P.3d 1275, 1282 (Ct. App. 2001) (noting that under I.C. § 19-3501, criminal defendants are given *additional* protection in regard to speedy trial requirements, beyond what is required by the United States and Idaho Constitutions). Idaho Code Section 19-3501 provides as follows:

> The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases:
>      . . . .

---

[13]      Moore does not claim that his conduct in North Dakota which gave rise to the DUI charge would not be a crime in Idaho.

(2) If a defendant, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date the information is filed with the court;

. . . .

(4) If a defendant, charged with a misdemeanor offense, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the defendant enters a plea of not guilty with the court.

Whether there was an infringement of a defendant's right to speedy trial presents a mixed question of law and fact. *State v. Clark*, 135 Idaho 255, 257, 16 P.3d 931, 933 (2000). While we defer to the trial court's findings of fact if supported by substantial and competent evidence, we exercise free review of the trial court's conclusions of law. *Id*. When a defendant who invokes his statutory speedy trial rights is not brought to trial within six months and shows that trial was not postponed at his request, the burden then shifts to the state to demonstrate good cause for the court to decline to dismiss an action. *State v. Rodriguez-Perez*, 129 Idaho 29, 38, 921 P.2d 206, 215 (Ct. App. 1996). "Good cause" means that there was a substantial reason for the delay that rises to the level of a legal excuse. *State v. Young*, 136 Idaho 113, 116, 29 P.3d 949, 952 (2001); *Clark*, 135 Idaho at 260, 16 P.3d at 936. Analysis of whether there was good cause for a statutory speedy trial violation is not simply a determination of who was responsible for the delay and how long the case has been pending. *Young*, 136 Idaho at 116, 29 P.3d at 952. Rather, the analysis should focus upon the reason for the delay. *Id*. But the reason for the delay cannot be evaluated entirely in a vacuum and a good cause determination may take into account the additional factors listed in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). *See Clark*, 135 Idaho at 260, 16 P.3d at 936. Thus, insofar as they bear on the sufficiency or strength of the reason for the delay, a court may consider (1) the length of the delay; (2) whether the defendant asserted the right to a speedy trial; and (3) the prejudice to the defendant. However, the reason for the delay lies at the heart of a good cause determination under I.C. § 19-3501. *Id*.

The ultimate question of whether legal excuse has been shown is a matter for judicial determination upon the facts and circumstances of each case. A trial judge does not have unbridled discretion to find good cause, however, and on appeal we will independently review the lower court's exercise of discretion. *Id*. We first examine the reason for the delay and then address the remaining *Barker v. Wingo* factors as they apply in this case.

### a.      Reason for delay

In evaluating the reason for the delay, different weights are assigned to different reasons. *United States v. Loud Hawk,* 474 U.S. 302, 315 (1986); *State v. Davis*, 141 Idaho 828, 837, 118 P.3d 160, 169 (Ct. App. 2005). Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable. *Doggett v. United States*, 505 U.S. 647, 656 (1992); *Davis*, 141 Idaho at 837, 118 P.3d at 169. We attach great weight to considerations such as the state's need for time to collect witnesses, oppose pretrial motions, or locate the defendant in the event that he or she goes into hiding. *Id.* A valid reason, such as a missing witness, should serve to justify appropriate delay. *Barker*, 407 U.S. at 531. However, there is an enormous difference between being inconvenienced and being unavailable. *Clark*, 135 Idaho at 260, 16 P.3d at 936; *Davis*, 141 Idaho at 837, 118 P.3d at 169. True unavailability suggests an unqualified inability to attend, while inconvenience merely implies that attendance at trial would be burdensome. *Id.*

A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the state. *Barker*, 407 U.S. at 531; *Davis*, 141 Idaho at 837, 118 P.3d at 169. A more neutral reason, such as negligence or overcrowded courts, should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the state rather than with the defendant. *Barker*, 407 U.S. at 531; *Davis*, 141 Idaho at 837, 118 P.3d at 169; *State v. Wavrick*, 123 Idaho 83, 89, 844 P.2d 712, 718 (Ct. App. 1992). While not compelling relief in every case where a bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him or her. *Doggett*, 505 U.S. at 657; *Davis*, 141 Idaho at 837-38, 118 P.3d at 169-70. Although negligence is weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution. *Id.*

In its memorandum denying Moore's motion to dismiss, the district court identified what it believed to be the causes of the delay:

> While there are other causes interacting to have ultimately caused delay, the three most prominent causes are (1) the prosecution's delayed research into the Defendant's history of DUIs which resulted in the original charge being filed as a misdemeanor; (2) the Defendant's initial waiver from a preference for a court trial, then revoking his original waiver of right to jury trial; and (3) scheduling issues regarding a peace officer witness for the State.

The court then likened the circumstances in this case to those in *State v. Davis*, noting that

17

[t]his multiple-cause delay is similar to the facts in *Davis* because the delay can be traced to both the State and the Defendant. The delay in this case has been over two years, which is roughly the same length of delay as in *Davis*. As in *Davis*, a significant portion of the delay can be directly attributable to the Defendant's actions in this case. Not only was the case delayed several times by the rescheduling due to the Defendant's changing preferences for either a court or jury trial, but there is also some indication that significant delay was caused by plea negotiations. In this case, there is little indication that the State was negligent in scheduling a trial setting or intentionally delayed the proceedings. There is little record as to the reasons for witness unavailability or the reason for what is recorded as merely a scheduling issue, and this again is similar to the case in *Davis*. In *Davis*, the court could not attribute an ambiguous scheduling issue to the State without more indication on the record.

Our review of the record establishes various causes for the delay, and we conclude that a significant portion of it was due to the defendant's actions. Initially, a jury trial was scheduled for approximately four and a half months from Moore's arrest on September 3, 2006. Then, at the pretrial conference on January 23, 2007, Moore waived his right to a jury trial and *both* parties signed a pretrial memorandum stating that the case was reset for a court trial which also included the notation: "offer extended--possible resolution prior to trial. Order [alcohol] evaluation." The minutes from the hearing indicate that the new trial date was to be "set on officer['s] schedule"--a reference presumably to the officer who made the arrest. The trial was reset for May 14, 2007. Thus, the almost four-month delay between the pretrial hearing and the next scheduled trial date was explicitly agreed to by the defendant.

On May 8, 2007, without either party present, the court reset the court trial to commence on July 23, 2007. There is no indication in the record why this action was taken--however, since the pretrial hearing, the charge against Moore had been amended and on April 28 he was again arrested for DUI. Accordingly, the court's unilateral action resulted in an additional two-month delay.

On July 23, both parties again signed a pretrial memorandum, agreeing that the case should be set for entry of plea and sentencing on September 12, 2007--resulting in another mutually agreed upon two-month delay. When September 12 arrived, Moore reasserted his right to a jury trial and trial was rescheduled for December 14, 2007. At the pretrial hearing on November 19, the trial was again reset for February 15, 2008. A pretrial memorandum--signed by both parties--noted the new February trial date and also indicated that the defendant planned to make a motion to dismiss and that an offer had been "conveyed." Moore did file a motion to

dismiss on speedy trial grounds on January 10, 2008, but did not file his memorandum in support of the motion until over four months later--on May 16. Thus, approximately six months passed between Moore's indication that he would file a motion to dismiss and his filing of the brief in support of the motion. The state responded on June 10 and after a hearing on the motion was held on June 12, the court allowed supplemental briefing on the issue. Both parties filed additional briefing, and the district court denied the motion on July 11, 2008.

On August 20, at Moore's request, the district court ordered a mental evaluation and vacated the jury trial now set to commence on August 25. At a September 26 hearing, it was noted that Moore was found competent to stand trial and a new jury trial date was scheduled for December 8. However, on December 1, Moore entered a conditional *Alford* guilty plea to the felony DUI charge and was sentenced on December 31, 2008.

As we review the above chronology, approximately four and a half months were due to the initial trial-setting within the statutory speedy trial time frame, six months were due to joint requests by both parties to continue various trial dates, two months were attributable to a unilateral action by the court in moving a trial date, an additional two-month delay occurred when, instead of entering a plea as planned, Moore reasserted his right to a jury trial, six months were a result of the delay between the time Moore indicated he would file a motion to dismiss and when he actually filed a brief supporting the motion, and approximately three more months passed during which the state responded to the motion, a hearing was held, and the court allowed supplemental briefing on the issue. A little over a month after his motion to dismiss was denied and five days before trial was to commence, Moore requested a mental evaluation which resulted in the trial date being vacated and an approximate three and one-half-month delay--during which time he was found competent to stand and a rescheduled jury trial was set to commence.

Thus, we conclude that aside from an unexplained two-month delay due to the court unilaterally vacating the May 2007 trial date, Moore was the reason for, agreed to, or acquiesced in the remaining delay in the prosecution bringing him to trial.

### b. Length of delay

*Barker's* four-part speedy trial test creates no bright line boundaries. Rather, the Supreme Court pointed out that because of the imprecision of the right to a speedy trial, the length of delay that will provoke an inquiry into whether those rights have been violated is necessarily dependent upon the peculiar circumstances of the case. *Barker*, 407 U.S. at 530-31.

The nature of the case is also of import in determining the period of delay that can be tolerated, for the period that is reasonable for prosecution of an ordinary street crime is considerably less than for a complex conspiracy charge. *Id.* at 531; *Lopez*, 144 Idaho at 353, 160 P.3d at 1288; *Davis*, 141 Idaho at 837, 118 P.3d at 169; *State v. McNew*, 131 Idaho 268, 272, 954 P.2d 686, 690 (Ct. App. 1998).

As Moore points out, sixteen months had passed from the time that formal charges were first filed and when he filed his motion to dismiss on speedy trial grounds; and a jury trial was not set to commence until approximately six months later. This delay was significant, given that the nature of the charges Moore was facing, one count of DUI and one count of DWP, cannot be characterized as complex. *Davis*, 141 Idaho at 837, 118 P.3d at 169 (concluding that a DUI charge arising out of a traffic stop could not be characterized as complex).

### c. Assertion of speedy trial rights

In the context of a constitutional speedy trial analysis, the defendant's assertion of his or her right to a speedy trial is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *Barker*, 407 U.S. at 531-32. Failure to assert the right will make it difficult for a defendant to prove that he or she was denied a speedy trial. *Id.* at 532. In *Barker*, the Court indicated that the circumstances surrounding the defendant's failure to assert his right to a speedy trial demonstrated that the defendant did not want a speedy trial. The Court concluded that "the record strongly suggests that while [the defendant] hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried." *Id.* at 535.

In regard to this factor, in denying Moore's motion to dismiss on speedy trial grounds, the district court stated that:

> [t]he Defendant's delay in asserting his right to a speedy trial is also a factor in this Court's analysis. In [*State v.*] *Davis*, there was an even stronger record of refusal to waive the right to speedy trial from the Defendant. In this case, though, several trial dates were rescheduled and continued well past the speedy trial deadline before the Defendant asserted his right and refusal for waiver [of his speedy trial rights]. While this Court will not assume an outright waiver from this conduct, the Defendant's initial acquiescence must be considered in the Court's balancing with other factors. . . .

Here, Moore did not assert his speedy trial rights until approximately sixteen months after he was arrested for misdemeanor DUI--and even after that he took nearly four months to file his brief on the motion and later requested that a scheduled trial date be vacated. In *Lopez*, 144

20

Idaho 349, 160 P.3d 1284, Lopez did not assert his right to speedy trial until he filed his motion to dismiss, two days before the date ultimately set for trial and seventeen months after he had been charged with three felonies. At no time did he request a more expeditious trial. We concluded that

> [t]he lateness of Lopez's assertion of his speedy trial right weighs heavily against his contention that the right was violated. *See Rodriquez-Perez*, 129 Idaho at 37, 921 P.2d at 214; *Beck*, 128 Idaho at 421, 913 P.2d at 1191. That is, the timing of a defendant's assertion of the right tends to disclose whether a defendant actually desired a speedy trial, *State v. Holtslander*, 102 Idaho 306, 312, 629 P.2d 702, 708 (1981), and is closely related to and affects other *Barker* factors, including prejudice and reasons for the delay. *Beck*, 128 Idaho at 421, 913 P.2d at 1191. Here, the late assertion of the right weighs significantly against Lopez in balancing the speedy trial factors.

*Id.* at 353, 160 P.3d at 1288. Similarly, in *Rodriguez-Perez*, 129 Idaho at 37, 921 P.2d at 214, we concluded that where the defendant's first assertion of speedy trial rights had occurred ten months after his arrest, his assertion of the right at a "relatively late point in the proceedings does not weigh in favor of dismissal under the *Barker* balancing process."

Thus, we must conclude here that Moore's failure to assert his speedy trial rights until sixteen months after his arrest is a factor that weighs against dismissal on speedy trial grounds.

### d. Prejudice

The fourth factor in the *Barker* analysis is prejudice to the accused caused by the delay. Prejudice is to be assessed in light of the interests that the right to a speedy trial is designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532; *Young*, 136 Idaho at 118, 29 P.3d at 954; *Lopez*, 144 Idaho at 354-55, 160 P.3d at 1289-90. The third of these is the most significant because a hindrance to adequate preparation of the defense "skews the fairness of the entire system." *Barker*, 407 U.S. at 532; *Lopez*, 144 Idaho at 355, 160 P.3d at 1290. *See also State v. Hernandez*, 133 Idaho 576, 583, 990 P.2d 742, 749 (Ct. App. 1999).

Relevant to this inquiry, the district court stated that it recognized that Moore's "legal status has caused him anxiety and uncertainty by the constant rescheduling." However, the court noted that since Moore had "agreed to many of the delays even past the speedy trial deadline, the Court does not weigh this anxiety to outbalance the other factors that weigh in the State's favor." In addition, while "oppressive pretrial incarceration," *see Lopez*, 144 Idaho at 354-55, 160 P.3d

21

at 1289-90; *Davis*, 141 Idaho at 840, 118 P.3d at 172, may be a significant source of prejudice to the defendant, the record indicates that although Moore was given custodial credit of 848 days for the entire period between his arrest on September 3, 2006, and his sentencing on December 31, 2008, he was not actually incarcerated during much of that time. Rather, Moore was released on this charge on November 27, 2006, after which he was again arrested for DUI on April 28, 2007, and subsequently released. Moreover, the record shows that when he was sentenced on December 31, 2008, he had been incarcerated for a total of 470 days as a result of both charges--and only continuously since February 23, 2008. Finally, Moore does not assert, nor do we find any evidence in the record, that the delay impaired his defense to the charges in any degree.

### e. Conclusion

While the delay in this case was significant for the prosecution of a DUI case, as we indicated above, the most important consideration is the reason for the delay and we conclude from the record that Moore agreed to, acquiesced in, or was the cause of most of the delay, except for a two-month delay instigated by the court. Further weighing against Moore is the fact that he did not assert his speedy trial rights until sixteen months after he was charged, as well as the fact that there is no perceptible prejudice to him from the delay that is apparent in the record. Accordingly, we affirm the district court's denial of Moore's motion to dismiss on statutory speedy trial grounds.[14] As such, we need not address Moore's argument that his constitutional speedy trial rights, a less stringent standard, were violated. *See McKeeth*, 136 Idaho at 626, 38 P.3d at 1282.

### 2. Use of North Dakota conviction

Moore asserts that at the time of his guilty plea he and the district court "agreed" that if his DUI conviction in Case No. 35486 was reversed on appeal insofar as the North Dakota conviction being improperly utilized to enhance the charge, then this case would be remanded

---

[14] Our conclusion that Moore's speedy trial rights were not violated in this instance should not be interpreted as precluding a trial court and/or a prosecuting attorney from simply asking a defendant whether he waives his speedy trial rights--thereby avoiding the creation of an appealable issue. As this Court recently stated in *State v. Livas*, 147 Idaho 547, 551 n.4, 211 P.3d 792, 796 n.4 (Ct. App. 2009), "good practice would demand as much."

back for possible reduction to a misdemeanor.[15]  Thus, he requests that if we grant relief in Case No. 35486 in regard to the North Dakota conviction--which we do above, albeit on evidentiary grounds--that we remand this case for "further proceedings as intended by the district court." Given our decision regarding the inadmissibility of the North Dakota judgment of conviction and subsequent reversal and remand in Case No. 35486, we remand this case for proceedings consistent with our opinion and the Rule 11 plea agreement.[16]

## III.

## CONCLUSION

In regard to Case No. 35486, we conclude that the district court erred in admitting the state's Exhibit 4 because the copy of the judgment of conviction was not certified.  Accordingly, we vacate the judgment of conviction and remand.  As guidance in the event there is a new trial, we also conclude that the court did not err in finding that the judgment of conviction was not constitutionally invalid, nor in deciding that the North Dakota statute was substantially conforming to the Idaho DUI statute such that it could be used to enhance the DUI charge at issue.  Pertaining to Case No. 36033, while we conclude that the district court did not err in denying Moore's motion to dismiss on speedy trial grounds, we remand the case for further proceedings consistent with the Rule 11 plea agreement and our decision in Case No. 35486.

Judge GRATTON and Judge MELANSON **CONCUR.**

---

[15]   When accepting Moore's guilty plea, the court noted that it was a conditional plea, stating that:

> This is a conditional plea which means you're allowed to appeal those issues:  the speedy trial issue and also this DUI out of North Dakota. . . .
>
>      . . . .
>      . . . And so, if those go up on appeal and the court is reversed on either or both of those decisions, then this case would come back.  And it may very well be either completely dismissed if you were not afforded a speedy trial or, certainly, it could be reduced to a misdemeanor. . . .

[16]   We express *no opinion* as to whether or how our decision here will affect the proceedings below.